**HAUSSERMANN v. BURNET, Commissioner of Internal Revenue.**

No. 5547.

Court of Appeals of the District of Columbia.
Argued Nov. 3, 1932.
Decided Jan. 3, 1933.

Albert S. Lisenby, of Washington, D. C., W. H. Lawrence, of San Francisco, Cal., and Hugh Satterlee, of Washington, D. C., for appellant.

G. A. Youngquist, Asst. Atty. Gen., and Helen R. Carloss, Sewall Key, C. M. Charest, and W. Frank Gibbs, all of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

GRONER, Associate Justice.

This appeal involves deficiencies in income taxes for the years 1922 and 1923, and, by consolidation under No. 5548, the years 1924 and 1925. Petitioner is a citizen of the United States, who has resided in the Philippine Islands since November, 1898. He was formerly a member of the Philippine bar, but in 1903, as attorney for a group of interested parties, he organized the Benguet Consolidated Mining Company as a sociedad anónima under the provisions of the Code of Commerce of Spain then in effect in the Philippine Islands. He became a member of the board and owned a small interest in the shares of the organization. Later he increased his holdings. Prior to 1915 the mining company had financial difficulties and suspended operations, and in that year petitioner reorganized the company and devoted thereafter practically his entire time to its affairs. In 1917 he became its largest stockholder, and since that date he and his former law associate have dominated its affairs. During each of the years 1920 to 1925, inclusive, more than 80 per centum of petitioner's gross income was derived from sources

within the Philippine Islands and consisted of amounts received as salary and director's fees and by distributions by way of dividends out of the earnings of the mining company. In 1920 petitioner's total income amounted to approximately $26,000, of which a little more than $2,700 resulted from salary and director's fees, a little more than $12,000 from dividends from the mining company, and a little more than $11,000 from other income. In 1921 his total income was a little in excess of $5,000, of which approximately $3,600 was dividends from the mining company and a little less than $500 salary. In 1922 his total income was above $20,000, his salary $1,000, his dividends $18,000. In 1923 his salary was nearly $13,000 and his dividends $68,000. In 1924 his salary was $2,600 and his dividends $100,000. And in 1925 his salary $600 and his dividends $120,000, of a total income of $124,000.

In filing his income tax returns for the several years, petitioner claimed the benefits of section 262 of the Revenue Act of 1921 (42 Stat. 271), section 262 of Revenue Act 1924, and 1926 (26 USCA § 1030). The Commissioner held, and the Board sustained his holding, that the amounts received out of the earnings of the mining company upon his interest therein did not represent income "derived from the active conduct of a trade or business within a possession of the United States" by the petitioner "either on his own account or as an employee or agent of another." The findings of fact by the board show that petitioner derived more than 80 per centum of his total gross income from sources within the Philippines, but the Board held that, while this fact satisfied the requirements of subdivision (a) (1) of section 262, it was not sufficient, because subdivisions (a) (1) and (a) (3) should be construed in the conjunctive rather than in the disjunctive or alternative, and that, since petitioner's income was not derived "from the active conduct of a trade or business either on his own account or as agent or employee of another," he was not entitled to the benefits of the section.

Petitioner on this appeal assigns as error, first, the action of the Board in holding subdivisions (a) (1) and (a) (3) of section 262 conjunctive rather than disjunctive; and, second, that the Board erred in not holding that 50 per centum of petitioner's gross income was derived from the active conduct of a trade or business by petitioner on his own account, etc.

From what has just been said, it will be seen that the questions presented involve a construction of section 262 (a) of the Revenue Act of 1921. The section is as follows:

Sec. 262. (a) That "in the case of citizens of the United States or domestic corporations, satisfying the following conditions, gross income means only gross income from sources within the United States—

"(1) If 80 per centum or more of the gross income of such citizen or domestic corporation (computed without the benefit of this section), for the three-year period immediately preceding the close of the taxable year (or for such part of such period immediately preceding the close of such taxable year as may be applicable) was derived from sources within a possession of the United States; and

"(2) If, in the case of such corporation, 50 per centum or more of its gross income (computed without the benefit of this section) for such period or such part thereof was derived from the active conduct of a trade or business within a possession of the United States; or

"(3) If, in the case of such citizen, 50 per centum or more of his gross income (computed without the benefit of this section) for such period or such part thereof was derived from the active conduct of a trade or business within a possession of the United States either on his own account or as an employee or agent of another."

It is therefore obvious that, if subdivision (a) (1) of section 262 should be construed in the disjunctive, petitioner is not chargeable with the tax, but we agree with the Commissioner and the Board that this interpretation cannot be sustained.

The language of the section shows that Congress was dealing with two classes of taxpayers, namely, individuals and corporations. Subparagraph (1), applicable to both, provides that, if 80 per centum or more of gross income is derived from sources within a possession of the United States, and (2) in the case of a corporation if 50 per centum of such gross income was derived from the active conduct of a trade or business within a possession of the United States, and (3) in the case of an individual (United States citizen) if 50 per centum of gross income was derived from the active conduct of a trade or business, etc., "either on his own account or as an employee or agent of another," benefits of the section shall apply.

In our view it is impossible to interpret the section otherwise than to ascribe to its requirements the condition that a corporation must bring itself within the terms of subdivisions (1) and (2) and the individual within subdivisions (1) and (3). Petitioner apparently concedes the correctness of this interpretation of the statute as applicable to corporations, but insists that by the use of the word "or" at the conclusion of subparagraph (2) Congress did not intend the interpretation we think should be made to apply to an individual. But this would be a strained construction of the section. Congress was dealing, as we have already seen, with two classes of taxpayers, and it is plain that the requirements as to each were the same. Both must have derived 80 per centum of gross income from sources within a possession of the United States, and both must have derived 50 per centum or more from the active conduct of a trade or business, likewise within a possession of the United States. To hold with petitioner would be to say that the congressional purpose in the enactment was to apply the rule just above announced to corporations but in the case of an individual to extend the benefits of the section without regard to whether any part of such income was derived from the active conduct of a business. The contrary of this has been consistently the ruling of the Treasury Department since the enactment of the Revenue Act of 1921. See Treasury Regulations 62, arts. 1135 and 1136.

■■ We therefore pass from this phase of the case to the inquiry whether 50 per centum of petitioner's gross income was derived from the active conduct of a trade or business within a possession of the United States either on his own account or as an employee or agent of another. As we have already pointed out, the greater portion of petitioner's income for the years 1920 to 1925 was received as dividends from the mining company. The Board held as to this income that he received it as a stockholder and not from the active conduct of a trade. This we think was correct. On petitioner's behalf it is argued that the mining company was not a corporation, but was in fact a partnership organized under the Code of Commerce then in force in the Philippine Islands, and that he occupied to the company the relationship of managing partner. He also insists that even if the company was a corporation, in view of the relation which we mentioned as existing between the company and himself, he derived his income from it in the active conduct of a trade or business either on his own account or as an employee or agent of the company. We think neither of these positions is sustainable.

As to the first, if it were necessary to determine the precise character of the mining company, that is to say, whether it is in fact a corporation, or, as counsel for petitioner insists, a "joint-stock company," the record shows that it has a managing board of directors, that its capital is divided into voting shares, that it has a president and vice president, and that its earnings are distributed to its shareholders ratably according to the number of their shares, respectively, and thus is within the test established by the Revenue Act of 1921 where the term "corporation" is said to include "associations, joint-stock companies, and insurance companies," and article 1502 of Regulations 62, promulgated under this provision, defining these as including associations doing business in an organized capacity whether created by state laws, agreements, declarations of trust, or otherwise. The Supreme Court in Burk-Waggoner v. Hopkins, Collector, 269 U. S. 110, 46 S. Ct. 48, 70 L. Ed. 183, has sustained the correctness of this interpretation and held that unincorporated joint-stock associations with a fixed capital stock divided in shares represented by certificates transferable on the books of the company and whose affairs are managed by a board of directors and executive officers and who conduct their business in general form like a corporation are subject by the act to be taxed as corporations. Petitioner's company is in all respects within this description, and, without regard to whether under the Spanish laws it was technically a corporation, it is, we think, under the tax laws of the United States as much within that category as though it had been granted a charter fixing the limits of its rights and responsibilities, and, if our conclusion in this respect is correct, it would follow that petitioner, in receiving dividends from the company, did not thereby derive income from the active conduct of a trade or business either on his own account or as an employee or agent of another. It is quite true that petitioner since 1915 has devoted his entire time to the business of the company, and it is equally true that the salary paid him for these services was vastly inadequate, considered as against the services rendered, and it is apparent he looked to the distribution of the profits rather than to the salary as a proper reward of his efforts, but the fact remains that he received the income, the taxation of

which is the subject of dispute, just to the same extent ratably as the other shareholders of the company received theirs. In this aspect, as we think, these amounts were not derived, within the contemplation of the revenue laws, from the active conduct of a trade or business, notwithstanding the fact that petitioner's efforts largely produced them.

This view is supported by the recent decision of the Supreme Court in Burnet, Commissioner v. Clark, 53 S. Ct. 207, 208, 77 L. Ed. ——, decided December 12, 1932, in which the Supreme Court, speaking of a somewhat similar situation and claim, said: "The respondent was employed as an officer of the corporation; the business which he conducted for it was not his own. There were other stockholders. And in no sense can the corporation be regarded as his alter ego, or agent." Nor, in our view, can he be regarded as the alter ego of the corporation.

Affirmed.