EMIL PETERSON, PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

Docket No. 103375. Promulgated November 7, 1941.

*Reeves Aylmore, Esq.*, and *Thomas U. Fowler, Esq.*, for the peti-
tioner.

*B. H. Neblett, Esq.*, for the respondent.

OPINION.

HILL: The first issue concerns the liability of petitioner for income taxes for the years 1918, 1919, and 1920. Petitioner contends that respondent is barred by limitation from asserting deficiencies as to the years 1918, 1919, and 1920, maintaining that the applicable statute of limitations is contained in section 250 (d) of the Revenue Act of 1918.[1] That section provides that except in the case of a false or fraudulent return the tax must be determined and assessed within five years from the date the return was due or made. Therefore, petitioner claims, the statute began to run with respect to each of the years 1918, 1919, and 1920 on the date the respective returns were due to be filed. Respondent argues that the statute of limitations applicable is section 250 (d) of the Revenue Act of 1921.[2]

Petitioner's contention might have validity if the applicable statute were section 250 (d) of the Revenue Act of 1918. The applicable statute, however, is section 250 (d) of the Revenue Act of 1921, which provides that with respect to income taxes imposed under prior acts the tax should be determined and assessed within five years after the return was filed; provided that in the case of a false or fraudulent return with intent to evade tax or "failure to file a required return," the tax might be determined, assessed and collected and a suit or proceeding for collection begun at any time after it becomes due.

---

[1] (d) Except in the case of false or fraudulent returns with intent to evade the tax, the amount of tax due under any return shall be determined and assessed by the Commissioner within five years after the return was due or was made, and no suit or proceeding for the collection of any tax shall be begun after the expiration of five years after the date when the return was due or was made. In the case of such false or fraudulent returns, the amount of tax due may be determined at any time after the return is filed, and the tax may be collected at any time after it becomes due.

[2] (d) The amount of income, excess-profits, or war-profits taxes due under any return made under this Act for the taxable year 1921 or succeeding taxable years shall be determined and assessed by the Commissioner within four years after the return was filed, and the amount of any such taxes due under any return made under this Act for prior taxable years or under prior income, excess-profits, or war-profits tax Acts, or under section 38 of the Act entitled "An Act to provide revenue, equalize duties, and encourage the industries of the United States, and for other purposes," approved August 5, 1909, shall be determined and assessed within five years after the return was filed, unless both the Commissioner and the taxpayer consent in writing to a later determination, assessment, and collection of the tax; and no suit or proceeding for the collection of any such taxes due under this Act or under prior income, excess-profits, or war-profits tax Acts, or of any taxes due under section 38 of such Act of August 5, 1909, shall be begun, after the expiration of five years after the date when such return was filed, but this shall not affect suits or proceedings begun at the time of the passage of this Act: * * * *Provided further,* That in the case of a false or fraudulent return with intent to evade tax, or of a failure to file a required return, the amount of tax due may be determined, assessed, and collected, and a suit or proceeding for the collection of such amount may be begun, at any time after it becomes due: * * *

We have previously considered the question of the applicability of section 250 (d) of the Revenue Act of 1918 to taxes imposed by the Revenue Act of 1918 where no return was filed. *Helmuth Heyl*, 34 B. T. A. 223; *Eli Kirk Price, Executor*, 23 B. T. A. 1192. In the *Heyl* case we applied section 276 (a) of the Revenue Act of 1934 (which is similar to section 250 (d) of the Revenue Act of 1921) to hold that the statute never began to run. In the *Price* case we held that no statute of limitations became effective as to the year 1918 where the required return was not filed, applying section 277 (a) (3) of the Revenue Act of 1926 which provides "the amount of income * * * taxes imposed by * * * the Revenue Act of 1918 * * * shall be assessed within five years after the return was filed, and no proceeding in court without assessment for the collection of such taxes shall be begun after the expiration of such period." The 1921 Act is specifically applicable to income taxes imposed under prior acts. We see no constitutional objection to such application. Accordingly, we hold that the statute of limitations never began to run with respect to petitioner's Federal income tax for the years 1918, 1919, and 1920.

Petitioner next maintains that the Revenue Act of 1918 was not in force with respect to citizens of the United States residing in the Philippines in either of the years 1918, 1919, and 1920. He maintains that since section 1400 (b) of the Revenue Act of 1918 [3] provided that the Revenue Act of 1916 as amended should remain in force for assessment and collection of income tax in the Philippine Islands, the Revenue Act of 1916 as amended and not the Revenue Act of 1918 controls as to the taxable years 1918, 1919, and 1920. He also relies on article 1131 of respondent's Regulations 45, which states: "the Revenue Act of 1918 is not in force in Porto Rico and the Philippine Islands. See also section 1400 of the statute." Respondent argues that petitioner is taxable under the Revenue Act of 1918, placing his reliance on the case of *Lawrence* v. *Wardell*, 273 Fed. 405.

In *Lawrence* v. *Wardell, supra*, the Circuit Court of Appeals for the Ninth Circuit held that a citizen of the United States residing in the Philippines in 1918 was subject to tax under the Revenue Act of 1918 despite the provisions of section 1400 of the Revenue Act of 1918. The court stated:

In the repealing clauses of the act of 1918, as quoted in the statement of the case, the act of 1916, as amended by the act of 1917, in force in the Philip-

---

* * * * * * *

[3] Title I of the Revenue Act of 1916 as amended by the Revenue Act of 1917 shall remain in force for the assessment and collection of the income tax in Porto Rico and the Philippine Islands, except as may be otherwise provided by their respective legislatures.

pines, was continued in force, except as might be otherwise provided by the local Legislature. As a general statute of the United States there was clear repeal, but as to the Philippines the act of 1916 was kept alive, as direct legislation by Congress with respect to the local affairs of the island, and not as a general statute of the United States.

A citizen of the United States residing in the Philippines becomes subject to the Income Tax Law under the act of 1918. By section 261, supra, of that act, the tax shall be levied, collected, and paid in accordance with the act of 1916, as amended, returns to be made and taxes to be paid under title I of the act by "every individual who is a citizen or resident" of the island; the local Legislature having power as already defined. The citizen of the United States residing in the island is in much the same position as is a citizen of a state, where there is a state income tax. The fact of residence in the Philippines avails him no more than would the fact of residence in a state.

\* \* \* \* \* \* \*

We are of the opinion that the *Lawrence* case was correctly decided and that United States citizens residents of the Philippines in 1918, 1919, and 1920 were subject to the taxes imposed by the Revenue Act of 1918. It should be noted that article 1131 of respondent's Regulations 45, upon which petitioner relies, is immediately followed by a provision in article 1132 of the same regulations which states that a citizen of the United States residing in the Philippine Islands is taxable in both the United States and the Philippines. Thus, respondent's regulations under the Revenue Act of 1918 interpreted the Revenue Act of 1916 to be applicable to residents in the Philippines in 1918 solely as a local revenue act. Respondent is sustained on this issue.

The second question for our determination is whether or not petitioner is taxable in the years 1921, 1922, and 1923 under the provisions of the Revenue Act of 1921. Petitioner contends that he was not required to file his return and was not taxable under the Revenue Act of 1921, since he had no gross income from sources within the United States and was exempt from tax on income from sources within the Philippines by virtue of section 262 (a) of the Revenue Act of 1921.[4]

Both parties agree that the 80 percent requirement relating to income from sources within a possession of the United States has

---

[4] Sec. 262 (a) That in the case of citizens of the United States or domestic corporations, satisfying the following conditions, gross income means only gross income from sources within the United States—

(1) If 80 per centum or more of the gross income of such citizen or domestic corporation (computed without the benefit of this section) for the three-year period immediately preceding the close of the taxable year (or for such part of such period immediately preceding the close of such taxable year as may be applicable) was derived from sources within a possession of the United States; and

\* \* \* \* \* \* \*

(3) If, in the case of such citizens, 50 per centum or more of his gross income (computed without the benefit of this section) for such period or such part thereof was derived from the active conduct of a trade or business within a possession of the United States either on his own account or as an employee or agent of another.

been satisfied. Disposition of this issue hinges on our resolution of the parties' different interpretations of the provision requiring at least 50 percent of the taxpayer's gross income for the three-year period immediately preceding the close of the taxable year to be derived from the active conduct of a trade or business within a possession of the United States. Respondent concedes that petitioner's wages and salary for all taxable years were derived from active conduct of a trade or business. Petitioner concedes that the dividends received in the taxable years were not derived from the conduct of a business. The controversy concerns items of interest which petitioner contends were derived from the active conduct of his business, while respondent argues that they are in the same category as dividends.

We are of the opinion that the interest items were not derived from the active conduct of a trade or business. While the interest items relate to interest on unpaid salary, it can not be said that such interest is derived from petitioner's business as a candy maker. There has been no proof that petitioner was in the business of loaning money and we are unable to make such a finding. Excluding interest from gross income derived from the active conduct of a trade or business, the gross income of petitioner from the conduct of a trade or business in the three-year period immediately preceding the close of each of the taxable years 1921, 1922, and 1923 was less than 50 percent of the total gross income received by petitioner in those periods. The statute of limitations with regard to the years 1921, 1922, and 1923 has not run because of petitioner's failure to file returns of tax under the 1921 Act. Section 250 (d). Accordingly, we hold for respondent on this issue.

The final issue concerns the 25 percent penalties which respondent has asserted against petitioner for the years 1921, 1922, and 1923 for failure to file returns in those years. Since petitioner has not shown that he came within the exemptive provisions of section 262 of the Revenue Act of 1921, the total gross income of petitioner is gross income for purposes of the income tax and for determining the necessity of filing returns. Section 223 (a) of the Revenue Act of 1921 provides that returns should be filed by individuals having net incomes in excess of their personal exemptions. Since petitioner's net income in each of the years 1921, 1922, and 1923 was in excess of his personal exemption, he was under a duty to file returns for those years. His returns to the Philippine Government were not the returns contemplated by the 1921 Act. Because of petitioner's failure to file the required returns imposition of the 25 percent penalty is mandatory. *Vahram Chimchirian*, 42 B. T. A. 1437.

*Decision will be entered for the respondent.*