LENORE S. ROBINETTE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 104200.    Promulgated May 13, 1942.

*T. G. Thompson, Esq.*, for the petitioner.
*W. W. Kerr, Esq.*, for the respondent.

OPINION.

SMITH: The respondent contends that the taxpayer, Charles C. Cole, formerly Charles C. Cohn, failed to file any income tax and excess profits tax returns as a citizen of the United States in 1917 and 1918 and has determined deficiencies for those years. He proposes to assess and collect the taxes from the petitioner as transferee of a transferee of the taxpayer, who is now deceased. The petitioner's primary contention is that Charles C. Cole filed all the returns which he was required to file and paid all taxes which he was required to pay in the years in question. Second, the petitioner argues that the returns which Cole did file started the running of the statute of limitations in his favor and that no tax liability of his may now be assessed against the petitioner. The respondent claims that the statute of limitations was tolled by the failure of Cole to file the required returns and that the filing of returns with the Philippine Government is immaterial.

With respect to the taxable year 1918 it is clear that the respondent's determination must be approved, upon the authority of *Lawrence* v. *Wardell*, 273 Fed. 405. The Revenue Act of 1918 imposed an income tax for the calendar year 1918 upon the income of every citizen of the United States. Section 1400 of the 1918 Act expressly repealed the Revenue Act of 1916, as amended by the Revenue Act of 1917, except with respect to any taxes which became due thereunder on or before December 31, 1917, and except with respect to the Philippine Islands. Section 1400 (b) of the 1918 Act provides in part as follows:

Title I of the Revenue Act of 1916 as amended by the Revenue Act of 1917 shall remain in force for the assessment and collection of the income tax in Porto Rico and the Philippine Islands, except as may be otherwise provided by their respective legislatures.

In addition to the above exception to the repeal provisions of section 1400, section 261 of the 1918 Act specifically provides in part:

That in Porto Rico and the Philippine Islands the income tax shall be levied, assessed, collected, and paid in accordance with the provisions of the Revenue Act of 1916 as amended.

\* \* \* \* \* \* \*

The Porto Rican or Philippine Legislature shall have power by due enactment to amend, alter, modify, or repeal the income tax laws in force in Porto Rico or the Philippine Islands, respectively.

Thus, the 1916 Act as amended remained effective in the Philippine Islands as a local income tax law similar to the income tax law enacted by any one of the states in order to tax its citizens or residents, or those having income received from sources within the state. The only return filed by the taxpayer for the calendar year 1918 was that filed under the Revenue Act of 1916 as amended by the 1917 Act and in accordance with the provisions of section 261 of the 1918 Act. The taxpayer was required to file this return because he was a resident of the Philippine Islands. The filing of the return with, and the payment of a tax to, the Philippine Government, however, did not relieve him of his liability under the 1918 Act as a citizen of the United States to pay a tax to the United States Government. *Lawrence* v. *Wardell, supra; Emil Peterson,* 45 B. T. A. 624.

In the *Lawrence* case the taxpayer was a United States citizen residing in the Philippine Islands during the taxable years in question. He filed a return for the year 1918 with the Philippine Government in accordance with the provisions of the Revenue Act of 1916, as amended, and as required by section 261 of the 1918 Act, and paid the tax to that Government. This return was similar to the one filed by the taxpayer in the instant case. The court held that the payment of the tax to the Philippine Government was a payment made under a local law equivalent to the income tax law of any state and that a tax was also due to the United States Government, against which

tax a credit was allowable for the amount paid in the Islands. We followed the *Lawrence* case in the *Peterson* case, which involved precisely parallel facts. The taxpayer in the instant case did not file an income tax return with or pay a tax to the United States Government for the year 1918.

No return having been filed for 1918, the Commissioner would nevertheless be prohibited from attempting to assess and collect the tax if the period of limitation provided in the 1918 Act were effective here. Section 250 (d) of the 1918 Act provides that no suit or proceeding for the collection of any tax shall be begun after the expiration of five years after the date the return was due. Section 250 (d) of the Revenue Act of 1921, however, contains the period of limitation which is applicable in the instant case. *Emil Peterson, supra; Helmuth Heyl*, 34 B. T. A. 223; *Eli Kirk Price, Executor and Trustee*, 23 B. T. A. 1192. In the *Peterson* case it was held that the filing of the return with the Philippine Government did not start the running of the statute of limitations on assessment and collection of the tax due to the United States Government because the limitation period provided in the 1921 Act was applicable. Section 250 (d) of the 1921 Act provides in material part as follows:

(d) The amount of income, excess-profits, or war-profits taxes due under any return made under this Act for  *  *  *  prior taxable years or under prior income, excess-profits, or war-profits tax Acts,  *  *  *  shall be determined and assessed within five years after the return was filed,  *  *  *  and no suit or proceeding for the collection of any such taxes due under this Act or under prior income, excess-profits, or war-profits tax Acts,  *  *  *  shall be begun, after the expiration of five years after the date when such return was filed,  *  *  *  That in the case of a false or fradulent return with intent to evade tax, or of a failure to file a required return, the amount of tax due may be determined, assessed, and collected, and a suit or proceeding for the collection of such amount may be begun, at any time after it becomes due  *  *  *

The respondent's determination with respect to the year 1918 is therefore approved.

Two deficiencies are asserted for the year 1917. One is the deficiency in excess profits tax which was imposed by Title II of the Revenue Act of 1917. The second is the deficiency in income tax for the year 1917.

The taxpayer admittedly did not file an excess profits tax return for the year 1917. Section 250 (d) of the Revenue Act of 1921, discussed above, also contains the period of limitation applicable to the excess profits tax of 1917 and, no such return having been filed by the taxpayer, the respondent is not barred by lapse of time from assessing and collecting such tax. The only questions to be considered are whether the taxpayer was liable for the tax and, if so, whether the amount of the tax has been properly computed by the respondent.

Partnerships and individuals were subject to the excess profits tax upon their net incomes under section 201 of the Revenue Act of 1917. Members of partnerships, although perhaps otherwise taxable as individuals, were not required to include in their excess profits tax net incomes their distributive shares of the partnership income. *William Hamilton Lawrence*, 44 B. T. A. 128; art. 41, Regulations 41. Therefore the taxpayer's distributive share of partnership income should be excluded from his net income in computing the excess profits tax for 1917. His distributive share of the income of the partnership of Cohn & Fisher of which he was a member in 1917 was $17,322.51.

The taxpayer had income during the taxable year in addition to his partnership income, some of which was derived from his individual law practice after the partnership terminated in November 1917 and the balance of which consisted of dividends and interest. The respondent has properly not attempted to include the taxpayer's income from dividends and interest in his excess profits tax net income. Such income was not derived from a trade or business and the tax does not apply to it. Income in the amount of $6,040.13 was received by the taxpayer from his individual law practice in 1917. Since the taxpayer had only a nominal amount of invested capital in this business and since he was a citizen of the United States, the excess profits tax is to be imposed in accordance with the provisions of section 209 of the 1917 Act at the rate of 8 percent of the net income in excess of $6,000, the latter amount being the exemption to which the taxpayer was entitled under that section. The petitioner's argument that no tax is due because the act did not extend to the Philippine Islands is without merit. The taxpayer's liability is predicated upon his United States citizenship and not upon his place of business or residence. The excess profits tax deficiency will be recomputed in accordance with the views set forth above.

The final questions are with respect to the taxpayer's liability for income tax for the year 1917 and whether the assessment and collection of any income tax which was due for that year is now barred by the statute of limitations. The questions are apparently ones of first impression here. The respondent treats the problem as being analogous to the question of liability for taxes in the year 1918 and relies upon *Lawrence* v. *Wardell, supra,* and *Emil Peterson, supra,* to support his contention that the taxpayer was required to file a return with and pay a tax to the United States Government for the year 1917. Neither of those cases involved taxes of the year 1917 or any of the revenue acts effective in 1917. Whether or not the reasoning of those cases is pertinent here will depend upon the existence of a parallel between the 1917 and 1918 statutory provisions. We therefore turn to an analysis of the applicable statutes.

Title I of the Revenue Act of 1916 imposed an income tax upon the net income of every individual a citizen or resident of the United States. Both a normal tax of two percentum and an "additional tax" at graduated rates were provided. Section 8 (b) of the 1916 Act provides that each citizen of the United States having a net income of over $3,000 and having no legal residence in the United States shall make a return for each taxable year to the collector of internal revenue at Baltimore, Maryland. Section 23 of the Revenue Act of 1916 provides in part as follows:

SEC. 23. That the provisions of this title shall extend to Porto Rico and the Philippine Islands: *Provided*, That the administration of the law and the collection of the taxes imposed in Porto Rico and the Philippine Islands shall be by the appropriate internal-revenue officers of those governments, and all revenues collected in Porto Rico and the Philippine Islands thereunder shall accrue intact to the general Governments thereof, respectively: \* \* \*

Title I of the Revenue Act of 1917 provides increased rates for the normal and additional taxes set forth in the 1916 Act. The 1917 Act also provides that the taxes imposed by it shall be "computed, levied, assessed, collected and paid" upon the same basis as the taxes under the 1916 Act, except that the personal exemptions are lowered and that the minimum amount of income on which returns were required is also reduced. Section 5 of the 1917 Act provides:

SEC. 5. That the provisions of this title shall not extend to Porto Rico or the Philippine Islands, and the Porto Rican or Philippine Legislature shall have power by due enactment to amend, alter, modify, or repeal the income tax laws in force in Porto Rico or the Philippine Islands, respectively.

These statutory provisions make it clear that the income tax liability of a United States citizen residing in the Philippine Islands in 1917 was entirely unlike his liability in 1918, as explained in *Lawrence* v. *Wardell*, *supra*, and *Emil Peterson*, *supra*. Those cases are therefore not in point. The taxpayer in the instant case filed a return and paid a tax for the year 1917 as required by the 1916 Act. The narrow question here is: Was the taxpayer required to file a second return and pay a second tax under the provisions of the Revenue Act of 1917? We hold that he was not required to do so. To reach any other conclusion would be judicially to legislate an exception into the relief provision (section 5) of the 1917 Act so that that section would prohibit the application of Title I of the 1917 Act in the Philippine Islands *except* against United States citizens residing there.

The 1916 Act, although it generally requires citizens residing abroad to file the returns and pay the tax in Baltimore, Maryland, specifically excepts citizens residing in the Philippine Islands from that requirement. Such citizens were required to file returns and pay taxes in the Islands. Title I of the 1917 Act also imposes taxes upon citizens generally but makes no changes which are now material as to the manner of filing returns and paying the taxes, and, furthermore, specifically

provides that its provisions shall not extend to the Philippines. It is perfectly plain that Congress did not intend that a person such as the taxpayer should be liable to taxation under Title I of the Revenue Act of 1917. The respondent's determination with respect to the income tax liability for 1917 is therefore disapproved. It is not necessary for us to discuss the effect of the statute of limitations. It is pertinent, however, to call attention to section 813 (a) of the Revenue Act of 1938 which remits the delinquency penalty and all interest accrued prior to July 1, 1939, in such cases as the present.

*Decision will be entered under Rule 50.*