**HELVERING, Com'r of Internal Revenue, v. CAMPBELL.**

**SAME v. NELL.**

**Nos. 5129, 5130.**

Circuit Court of Appeals, Fourth Circuit.

Jan. 10, 1944.

866

Carlton Fox, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Helen R. Carloss, Sp. Assts. to Atty. Gen., on the brief), for petitioner and cross-respondent.

Clark J. Milliron, of Los Angeles, Cal., for respondents and cross-petitioners.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

PARKER, Circuit Judge.

These are petitions and cross petitions to review decisions of the United States Tax Court in cases involving the tax liability of Oscar F. Campbell and Edward J. Nell. Both taxpayers during the tax years in question were citizens of the United States, married and residing with their wives in the Philippine Islands. In 1939 Campbell and wife filed income tax returns for the years 1918, 1919 and 1920 with the Collector at Baltimore. During the same year Nell and wife filed returns with the same collector for the years 1925 to 1931 inclusive. Both taxpayers had filed returns and paid taxes during the years in question to the Philippine Collector under the Philippine income tax law on income from sources wholly within the Philippine Islands. The Commissioner added the income reported by the wife in each case to that of the husband and assessed deficiencies based on the amounts due under the applicable income tax statutes, with deduction for the amounts paid under the Philippine Act, but in the case of Nell with deduction of only that part of the Philippine tax imposed on income which was held subject to federal tax.

The Tax Court held that both taxpayers were liable as citizens of the United States for income tax under the Revenue Act of 1918 and subsequent acts applicable to the years in question; that their liability was not barred by limitations; that taxpayers were taxable as to only half of the income received because of the community property law prevailing in the Philippines and that they were entitled to credit the entire Philippine tax on their tax liability. The petitions of the Commissioner challenge the last two of these determinations, the cross petitions of the taxpayers challenge the first two.

*The Question of Tax Liability.*

The contention of the taxpayers is that they were subject to tax only under the Revenue Act of 1916 as amended, which authorized the imposition of an income tax for the Philippine Islands and Porto Rico, upon citizens and residents of these possessions of the United States. This tax was collected by the internal revenue officers of the governments of these possessions and accrued "intact to the general Governments thereof". See Revenue Act of 1916 sec. 23, 39 Stat. 776; Revenue Act of 1918 sec. 261, 40 Stat. 1087; sec. 261 of the Revenue Act of 1921, 42 Stat. 271, and section 261 of Revenue Acts 1924, 1926, 43 Stat. 294, 44 Stat. 52, 26 U.S.C.A. Int.Rev.Acts, pages 52, 199. There is no reason, however, to construe the Acts of Congress under which this tax was levied as exempting from the general provisions of the income tax laws of the United States those citizens of the United States who happened to be residing in the Philippine Islands; and it is perfectly clear that no such exemption was intended.

The Revenue Act of 1918 was a war measure and the federal income and excess-profits taxes for which it and subsequent acts provided were imposed upon the net income of "every individual". Secs. 210 and 211, 40 Stat. 1062, 42 Stat. 233, 43 Stat. 264, 265, 44 Stat. 21, 26 U.S.C.A. Int. Rev.Acts, pages 15, 16, 160. They were imposed upon income of citizens residing in foreign countries and possessions of the United States and express provision was made for the deduction from the tax imposed of income, war-profits and excess-profits taxes paid upon income derived from sources in such foreign countries or possessions. Sec. 222(a) (1) provides: "That the tax computed under Part II of this title shall be credited with: (1) In the case of a citizen of the United States, the amount of any income, war-profits and excess-profits taxes paid during the taxable year to any foreign country, upon income derived from sources therein, or to any possession of the United States." That sec. 222(a) (1) was intended to apply to citi-

zens residing in possessions, and not merely to those residing in the United States and deriving income from sources in the possessions, is shown by the fact that another subsection, 222(a) (2), provided for the deduction of taxes paid to the possession by "residents" of the United States.

The history of the legislation shows clearly that citizens of the United States deriving income from sources in Porto Rico or the Philippines should pay tax thereon, notwithstanding they had paid tax thereon to such possession, subject to credit, however, for the last named tax. The matter was discussed in the Conference Committee Report in connection with Amendment No. 118 (1939–1 Cum.Bull. part 2 138), which was incorporated in the Act as a part of sec. 222. The report states: "Amendment No. 118. The House bill provided that a citizen of the United States might credit against his income tax the amount of any income, war-profits, and excess-profits taxes paid to any foreign country, Puerto Rico, or the Philippine Islands, upon income derived from sources therein, and allowed a similar credit to an alien resident if his country makes reciprocal provisions. The senate amendment entirely rewrites the section and broadens it to include a credit for taxes paid to any possession of the United States, which is also to be given to an alien resident of the United States."

Additional proof of Congress' continuing conception that the general tax provisions applied to citizens of the United States residing in the Philippines as well as in our other possessions is found in the provisions of sec. 262 of the 1921, 1924 and 1926 Acts, 42 Stat. 271, 43 Stat. 294, 44 Stat. 53, 26 U.S.C.A. Int.Rev.Acts, pages 53, 200, and sec. 251 of the Act of 1928, 45 Stat. 850, 26 U.S.C.A. Int.Rev.Acts, page 420. These provisions grant partial relief from the application of the tax law to United States citizens residing in the possessions of the United States (except the Virgin Islands) and deriving substantial income from trade or business therein. They exempt certain parts of the taxpayer's income from gross income taxable to the United States Treasury and are applicable to citizens of the United States residing in the Philippines. Haussermann v. Burnet, 61 App.D.C. 347, 63 F.2d 124; Peterson v. Com'r, 45 B.T.A. 624. That such an exemption from taxation by the United States was thought necessary by Congress to put citizens of the

country trading in our possessions on an equal footing with traders from other countries, shows conclusively that Congress understood that they were required to pay income taxes into the United States Treasury on their income derived from sources within the possessions.

Contemporary administrative interpretation of the Act supports the conclusion reached. Treasury Regulations 45 Art. 1132, provides: "Art. 1132. Taxation of individuals between United States and Porto Rico and Philippine Islands.—(a) A citizen of the United States who resides in Porto Rico, and a citizen of Porto Rico who resides in the United States, are taxed in both places, but the income tax in the United States is credited with the amount of any income, war profits and excess profits taxes paid in Porto Rico. See Sec. 222 of the statute and articles 381–384. * * * The same principles apply in the Philippine Islands."

All of the adjudicated cases dealing with the matter support the conclusion. See Lawrence v. Wardwell, 9 Cir., 273 F. 405; Cotterman v. United States, 62 Ct.Cl. 415; Peterson v. Commissioner, 45 B.T.A. 624; Robinette v. Commissioner, 46 B.T.A. 1138, affirmed 6 Cir., 139 F.2d 285. In Cook v. Tait, 265 U.S. 47, 44 S.Ct. 444, 68 L.Ed. 895 the Supreme Court held the general provisions of the income tax act applicable to income of a citizen of the United States residing in a foreign country; the credit section above quoted allows the same credit for a tax paid to a possession as for one paid to a foreign country; and no reason suggests itself why Congress should have intended an exemption from the federal tax for citizens residing in a possession not accorded a citizen residing in this country or in a foreign country. Reason as well as authority is clearly to the contrary.

The question was fully examined by the Circuit Court of Appeals of the 9th Circuit in Lawrence v. Wardwell, supra, a case which was decided in the year 1921. We agree with the following statement of the law made in that case by Judge Hunt [273 F. 409]:

"The comprehensiveness of the 1918 act is as great as language could make it, for it applied to the income of every individual, changing the rates, and obviously imposing taxes at the new rates, where no tax could have been imposed prior to the 1918 act. * * *

"In the repealing clauses of the act of 1918, as quoted in the statement of the case, the act of 1916, as amended by the act of 1917, in force in the Philippines, was continued in force, except as might be otherwise provided by the local Legislature. As a general statute of the United States there was clear repeal, but as to the Philippines the act of 1916 was kept alive, as direct legislation by Congress with respect to the local affairs of the island, and not as a general statute of the United States.

"A citizen of the United States residing in the Philippines becomes subject to the Income Tax Law under the act of 1918. By section 261, supra, of that act, the tax shall be levied, collected, and paid in accordance with the act of 1916, as amended, returns to be made and taxes to be paid under title I of the act by 'every individual who is a citizen or resident' of the island; the local Legislature having power as already defined. The citizen of the United States residing in the island is in much the same position as is a citizen of a state, where there is a state income tax. The fact of residence in the Philippines avails him no more than would the fact of residence in a state.

"Section 222 of the act of 1918, in providing for credits for taxes, makes the taxes computed under part II of the title subject to a credit (1) in the case of a citizen of the United States the amount of any income taxes paid during the taxable year to any foreign country upon income derived from sources therein, 'or to any possession of the United States.' It is argued that a citizen of the United States, resident of the islands, is not subject to taxation under the 1918 act, because the return to the 'possession' is not a return under the act of 1916, though it is a return under a local act. Section 222 allows to one residing in the Philippines a credit upon the tax computed under part II of the 1918 act, but there is nothing to indicate that there is exemption to the citizen residing in the islands. He may have paid to the island treasury such amounts as are due, but still be liable to the United States for a sum in excess of that paid in the islands."

### The Question of Limitations.

■ Little need be said about limitations. No return of federal income tax was filed by either taxpayer until the year 1939, and the deficiencies were determined and assessed well within the limit of the ap-

plicable statutes. The limitation begins to run only after the filing of the return. Revenue Act of 1921 sec. 250, 42 Stat. 264; Revenue Act of 1926 sec. 277(a), 44 Stat. 9, 26 U.S.C.A. Int.Rev.Acts, page 207; Revenue Act of 1928 sec. 275, 45 Stat. 791, 26 U.S.C.A. Int.Rev.Acts, page 429; Russell v. United States, 278 U.S. 181, 49 S.Ct. 121, 73 L.Ed. 255; In re Peterson, 45 B.T.A. 624; 5 Paul and Mertens Federal Income Taxation sec. 50.09.

■ Taxpayers contend that the filing of returns with the Philippine Collector under the Philippine income tax law was sufficient to set the period of limitations running. The answer is that such returns did not apprise the proper tax official of the United States of the liability of taxpayers for the federal income tax imposed upon them. The statute required that returns of taxpayer not having a place of business in the United States be filed with the Collector at Baltimore, Md. Secs. 227(b) of the Acts of 1918, 1921, 1924 and 1926, 40 Stat. 1075, 42 Stat. 252, 43 Stat. 282, 44 Stat. 39, 26 U.S.C.A. Int.Rev.Acts, pages 37, 182. If the returns had been so filed, the amount of the taxes would have been entered upon appropriate lists and collection would have been made in due course. The returns filed with the Philippine Collector could not serve as a basis for such action. The return must be filed as the statute requires to set the statute of limitations running. W. H. Hill Co. v. Commissioner, 6 Cir., 64 F.2d 506, 507.

In 1938 Congress, because of hardship resulting from failure of United States citizens resident in the Philippines to file returns as required by the federal income tax acts, relieved such taxpayers of interest and penalties consequent upon such failure accruing prior to July 1, 1939. Revenue Act of 1938 sec. 813, 52 Stat. 577, 26 U.S.C.A. Int.Rev.Acts, page 1154. The explanation of this provision made on the floor of the Senate by Senator Harrison (83 Cong.Rec. p. 5041) is illuminating both upon the question of liability of citizens resident in the Philippines for the federal income tax and upon the question of limitations. He said:

"This committee amendment is a relief provision, made in the interest of fairness and equity, to deal with a difficult situation in the Philippine Islands. It has been represented to the committee by the High Commissioner to the Philippine Islands and other witnesses that a serious situation has

developed in the Islands by reason of efforts made by the Treasury Department in recent years to collect deficiencies in tax for the years governed by the Revenue Acts of 1917 and 1918, from citizens of the United States who were residents of the Islands during all or some of those years, and from domestic corporations doing business chiefly in the Islands during such years. Such deficiencies arise principally with respect to income derived from sources within the Islands. It appears that there was widespread misapprehension among taxpayers in the islands as to their federal tax liabilities and that no systematic effort was made by the government, prior to the beginning of the present administration, to collect the delinquent taxes, and that the taxpayers may have been further misled by various statements made by officials that no effort to collect them would be made. Since the statute of limitations never runs in cases where no returns are filed, many of such taxpayers are liable, not only for the amount of the deficiency in tax, but for penalties and accumulated interest in amounts so large that full payment at this late date would be ruinous to them.

"The committee believes that a sufficient measure of relief from the hardships of this situation will be granted by providing for the collection of the delinquent taxes without the interest additions to tax, and penalties otherwise required by law. Such limited relief will avoid an unjustified discrimination against other taxpayers similarly situated, who have paid taxes for these years, in whole or in part, which discrimination would result if these unpaid tax liabilities should be abated in full.

"In order to provide a reasonable additional period for such delinquent taxpayers to raise the funds necessary to pay such deficiencies, the amendment further provides for the suspension of collection proceedings with reference thereto until July 1, 1939. Interest will begin to run on July 1, 1939, with respect to such deficiencies not paid before that date. The relief from additions to tax and penalties provided by the amendment does not apply to conduct of such taxpayers occurring after the date of the enactment of the bill, such as the filing of false returns or false offers in compromise with respect to taxes for the years covered by the amendment. No credits or refunds will be made as a result of the adoption of this amendment."

*The Question of Community Property.*

The income as to both taxpayers was from personal services and personal property within the Philippine Islands, where taxpayers and their wives were living; and two questions are presented with regard thereto: (1) whether the conjugal property law of the Philippine Islands has application, and (2) if so, whether the Tax Court properly held that under such law the husband was taxable with only one-half the income of the conjugal partnership. Both questions, we think, should be answered in the affirmative.

■ Taxpayer Campbell was married in the Philippine Islands in the year 1901 and from that time continuously through the tax years in question, i.e. through the year 1920, he and his wife resided together in the Islands. Nell and wife were married in California in 1919 but went to the Islands in 1921 and resided there continuously until the hearing of the case in the Tax Court. There is nothing in the record to indicate that either couple did not have the intention of remaining in the Islands for an indefinite period and no reason for not holding, as the Court held, that by such residence they had acquired a domicile in the Islands. Granite Trading Corp. v. Harris, 4 Cir., 80 F.2d 174, 176. As said by this Court in the case cited with respect to the question of acquiring domicile: "Residence animo manendi is determinative; and the animus manendi within the meaning of the rule is present where there is an intention of remaining in the new domicile for an indefinite period. The fact that there may be some floating intention of moving elsewhere later, or even of returning to the old domicile does not prevent a new domicile being acquired in the meantime. Story, Conflict of Laws (7th Ed.) § 46; Minor, Conflict of Laws §§ 60, 61; Beale, Conflict of Laws, vol. 1, p. 142; 19 C.J. 407; Ennis v. Smith, 14 How. 400, 422, 14 L.Ed. 472; Williamson v. Osenton, 232 U.S. 619, 624, 34 S.Ct. 442, 58 L.Ed. 758; Gilbert v. David, 235 U.S. 561, 35 S.Ct. 164, 59 L.Ed. 360."

■ And we think it equally clear that the conjugal property rights of taxpayers are to be determined by the law of the Islands, the law of the domicile of the parties at the time these rights were acquired. 11 Am.Jur. 183 sec. 14; Com'r v. Cavanagh, 9 Cir., 125 F.2d 366, 368; Blumenthal v.

Com'r, 2 Cir., 60 F.2d 715; Cf. Bank v. Posadas, 56 Phil. 215.

The Circuit Court of Appeals of the Ninth Circuit, in Com'r v. Cadwallader, 9 Cir., 127 F.2d 547, examined thoroughly the question of conjugal rights in community property under the law of the Philippine Islands and reached the conclusion that the wife acquired a half interest in such property upon its acquisition and not a mere inchoate expectancy. We have examined the applicable Philippine Island decisions and think this conclusion is correct. The controlling case is Gibbs v. Government of the Philippine Islands, 59 Phil. 293, where the court said: "Under the provisions of the Civil Code and the jurisprudence prevailing here, the wife, upon the acquisition of any conjugal property, becomes immediately vested with an interest and title therein equal to that of her husband, subject to the power of the management and disposition which the law vests in the husband. Immediately upon her death, if there are no obligations of the decedent, as is true in the present case, her share in the conjugal property is transmitted to her heirs by succession."

The interest of the spouses in community property in the Philippines is not substantially different, we think, from that in the State of Washington, dealt with by the Supreme Court in Poe v. Seaborn, 282 U. S. 101, 51 S.Ct. 58, 75 L.Ed. 239; and it follows from the decision in that case that only one-half of the income of the conjugal partnership is taxable against the husband.

The cases relied upon by the Commissioner were analyzed and distinguished by the 9th Circuit in the opinion in the Cadwallader case, supra, and nothing need be added to what was there said. With respect to the case of Madrigal and Peterno v. Rafferty and Concepcion, 38 Phil. 414, upon which the Commissioner particularly relies, it should be observed that the decision of the Philippine Islands court as to taxability of income from community property is not of importance because of the subsequent decision of the Supreme Court to the contrary in Poe v. Seaborn, supra. The decision of the Philippine court in the Gibbs case, however, is of the utmost importance because it is a definite decision of the highest local court as to the interest of husband and wife in conjugal property. We look to local law to determine what rights are created with respect to property and income, not their taxability under federal statutes. "State law creates legal interests and rights. The federal revenue acts designate what interests or rights, so created, shall be taxed." Morgan v. Com'r, 309 U.S. 78, 626, 60 S.Ct. 424, 426, 84 L. Ed. 585; Leser v. Burnet, 4 Cir., 46 F.2d 756. Dayton & Michigan R. Co. v. Com'r, 4 Cir., 112 F.2d 627, 630.

### The Question of Deducting the Philippine Tax.

Certain items excluded in computing the net income of the taxpayer Nell under the federal income tax laws were not excluded in computing his net income under the Philippine law. The Commissioner contends that because of this fact he is not entitled to deduct the entire Philippine tax but only a proportionate part thereof. We think that the Tax Court was correct in holding that he was entitled to deduct the entire tax. The federal tax was imposed on taxpayer's income, and he was given the deduction, not with respect to taxes paid on the portion of the income taxed, but for "the amount of any income, war-profits, or excess-profits taxes paid or accrued during the taxable year to any foreign country or to any possession of the United States." The statutes applicable are sec. 222(a) (1) and (5) of the Revenue Act of 1926, 44 Stat. 9, 26 U.S.C.A. Int.Rev.Acts, page 179; and sec. 131(a) (1) and (b) of the Revenue Act of 1928, 45 Stat. 791, 26 U.S.C.A. Int.Rev.Acts, page 394. The only limitation upon the deduction is that expressed in the following language of sec. 131(a) (1), (b) of the last mentioned act: "Limit on credit.—In no case shall the amount of credit taken under this section exceed the same proportion of the tax (computed on the basis of the taxpayer's net income without the deduction of any income, war-profits, or excess-profits tax any part of which may be allowed to him as a credit by this section), against which such credit is taken, which the taxpayer's net income (computed without the deduction of any such income, war-profits, or excess-profits tax) from sources without the United States bears to his entire net income (computed without such deduction) for the same taxable year."

In determining the amount of credit under this provision, income from sources without the United States becomes the numerator of the fraction which is to be applied to the United States tax against which the credit is taken and the entire in-

come becomes the denominator. Where taxpayer's entire net income is from sources in the Philippine Islands, the numerator and denominator of the fraction are the same and the result is that the entire Philippine tax is deductible. If the federal net income is found by excluding items included in computing income for the purposes of the Philippine tax, the result is that the numerator of the fraction is greater than the denominator and the result is the same. There is no ambiguity in the language used and no ground for denying the credit which it clearly authorizes. The interpretation for which the Commissioner argues would read into the statute a provision for an additional proration that is not there.

There was no error and the decisions of the Tax Court will be affirmed.

Affirmed.