*Decision will be entered under Rule 50.*

ROSE B. LARSON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ESTATE OF A. E. LARSON, DECEASED, SHIRLEY D. PARKER, ADMINISTRATOR, D. B. N. C. T. A., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 88813, 88814.    Promulgated July 24, 1941.

*H. B. Jones, Esq.*, and *George C. Kinnear, Esq.*, for the petitioners.
*B. H. Neblett, Esq.*, and *Clyde R. Maxwell, Esq.*, for the respondent.

1100

## OPINION.

HILL: The first issue is basic and its determination will affect most of the other questions before us in this proceeding. This issue concerns the treatment for income tax purposes of income from community property received by the estate of decedent during the period of administration of the estate. Petitioner contends that all such income received by the estate should be reported as income of the estate by the fiduciary representing the estate. Respondent contends that the community income received by the estate is taxable one-half to the estate and one-half to the survivor of the community.

Petitioner and respondent do not differ on the question of whether petitioner as surviving spouse has a vested interest in the community property. Respondent argues, however, that, since petitioner had a vested interest in the property, the income should be taxed to her,

Petitioner's contention is that regardless of the fact that she had a vested interest in the property she was not entitled to its income during the period of administration. The applicable Federal statutes are section 161 (a) (3) and section 162 (c) of the Revenue Act of 1934.[1] State laws concerning the phase of community property here under consideration are sections 1342 and 1419 of Remington's Revised Statutes of Washington.[2]

The courts of the State of Washington have long adhered to the rule that on the death of either husband or wife the whole of the community property is subject to administration as the estate of the deceased spouse. *Ryan* v. *Fergusson*, 3 Wash. 356; 28 Pac. 910; *In re Guye's Estate*, 54 Wash. 264; 103 Pac. 25; *F. T. Crowe & Co.* v. *Adkinson Construction Co.*, 67 Wash. 420; 121 Pac. 841; *Stanton* v. *Everett Trust & Savings Bank*, 145 Wash. 165; 259 Pac. 10. Thus the entire income on community property during the period of administration is receivable by the estate.

We are of the opinion that the entire income from community property of decedent and petitioner during the period of administra-

---

[1] SEC. 161. IMPOSITION OF TAX.

(a) APPLICATION OF TAX.—The taxes imposed by this title upon individuals shall apply to the income of estates or of any kind of property held in trust, including—

\* \* \* \* \* \* \*

(3) Income received by estates of deceased persons during the period of administration or settlement of the estate; and

SEC. 162. NET INCOME.

The net income of the estate or trust shall be computed in the same manner and on the same basis as in the case of an individual, except that—

\* \* \* \* \* \* \*

(c) In the case of income received by estates of deceased persons during the period of administration or settlement of the estate, and in the case of income which, in the discretion of the fiduciary, may be either distributed to the beneficiary or accumulated, there shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year, which is properly paid or credited during such year to any legatee, heir, or beneficiary, but the amount so allowed as a deduction shall be included in computing the net income of the legatee, heir, or beneficiary.

[2] § 1342. *Descent of Community property.*—Upon the death of either husband or wife, one-half of the community property shall go to the survivor, subject to the community debts, and the other half shall be subject to the testamentary disposition of the deceased husband or wife, subject also to the community debts. In case no testamentary disposition shall have been made by the deceased husband or wife of his or her half of the community property, it shall descend equally to the legitimate issue of his, her or their bodies. If there be no issue of said deceased living, or none of their representatives living, then the said community property shall all pass to the survivors to the exclusion of collateral heirs, subject to the community debts, the family allowance, and the charges and expenses of administration. \* \* \*

§ 1419. *Community property, how administered.*—A surviving spouse shall be entitled to administer upon the community property, notwithstanding any provisions of the will to the contrary, if the court find such spouse to be otherwise qualified; but if such surviving spouse do not make application for such appointment within forty days immediately following the death of the deceased spouse, he or she shall be considered as having waived his or her right to administer upon such community property. If any person, other than the surviving spouse, make application for letters testamentary on such property, prior to the expiration of such forty days, then the court, before making any such appointment, shall require notice of such application to be given the said surviving spouse, for such time and in such manner as the court may determine, unless such applicant show to the satisfaction of the court that there is no surviving spouse or that he or she has in writing waived the right to administer upon such community property. \* \* \*

tion was taxable to the estate. The instant case is not distinguishable from *Barbour* v. *Commissioner*, 89 Fed. (2d) 474. There community property stock was sold after the death of the husband but during the period of administration of his estate. The Circuit Court of Appeals for the Fifth Circuit held that income received by the administrator of the estate during the period of administration was taxable in its entirety to the estate. We have recently approved this rule. *Estate of Lucile Gruy*, 42 B. T. A. 1279. We have shown above that the Washington authorities have laid down the rule that community property is subject to administration as the estate of deceased spouse. Those cases do not differ materially from the Texas authorities relied upon by the court in the *Barbour* case. Respondent cites the case of *George Drumheller*, 27 B. T. A. 209, for the proposition that one-half of the community income is taxable to petitioner. In that proceeding, however, the instant problem was not before us. That case is not controlling because the specific question we are now considering was not in controversy.

This was not the case of "a nonintervention will" in which, upon a showing of solvency, the estate may be administered without court approval. Here each sale and distribution required court sanction and petitioner could only receive the income in question as a distribution from the estate. The facts of the case at bar present petitioner's view in the strongest possible light. Since the community property was subject to administration and income therefrom was receivable by the estate during administration, we believe it would be contrary to the intendment of section 161 (a) (3) of the Revenue Act of 1934 to tax any part of that income to petitioner. In spite of petitioner's vested interest in the property, she had no right to the income during the taxable year. We hold that the income from community property subject to administration is taxable in its entirety to the estate of decedent during the period of administration.

The second and third issues relating to interest on obligations and rentals from property held by the community are necessarily determined by our decision on the first issue. We hold that no part of the sum of $2,374.68, interest, nor the sum of $9,782.49, rentals, which respondent included in petitioner's gross income, is taxable to petitioner. The entire amounts are includable in income of the decedent's estate.

The next issue is whether or not any portion of the dividends on community stock is taxable to petitioner. This question is also determined by our disposition of the first issue. Petitioner contends, however, that she erroneously reported the sum of $1,570 in gross income for the year 1934. The amount reported on her return represents one-half the sum of $3,140, which is the portion of a $3,600 dividend of the Surety Finance Co. which might be said to have accrued at the

date of decedent's death. Since the dividend was not received until after the estate was in administration, no part of the dividend should have been included in petitioner's gross income. We hold that petitioner should not have included this amount in her 1934 income tax return.

In connection with this issue petitioner made a contention concerning the taxability of the proceeds of a dividend check in the sum of $3,600, dated December 31, 1934. This contention turned upon whether or not the check was actually received during the taxable year. Because of our determination of the first issue, we need not consider whether the check was actually received in the taxable year or in the year 1935.

The fifth issue is whether or not petitioner is taxable on gain from the sale of one-half of 85,000 shares of Sunshine Mining Co. stock which were sold by the estate of decedent in the taxable year. Petitioner contends that the shares sold came entirely from the interest of the estate. Respondent argues that it was the intent of the executor to sell shares from petitioner's interest as well as that of decedent's estate. He urges that the listing plan contemplated the sale and option of about 40 percent of each of four shareholders' holdings and that this intent would not be satisfied unless 40 percent of the entire holdings of the Sunshine Mining Co. stock in the hands of the executor was subject to option and sale. Respondent further argues that there was no immediate need for the sale of the stock, since the will of the decedent permitted the executor to have three years to liquidate the estate in order to pay bequests.

We are of the opinion that the shares in question were sold from the interest of decedent. We are convinced that petitioner gave neither actual nor tacit consent to the sale of shares from her interest. Although Parker, as her agent, approved the action of the executor in optioning the shares, it must be remembered that petitioner was residuary legatee and vitally interested in the preservation of the worth of the estate. Testimony at the hearing clearly indicated that the options and sales were to enhance the value of the remaining shares in addition to obtaining funds for the payment of legacies.

The executor of the estate petitioned for the Probate Court's permission to option and sell the shares for payment of bequests. No citation of cases is necessary to demonstrate that petitioner's interest could not be sold to pay bequests under decedent's will. Although three years for liquidation of property to pay bequests was allowed to the executor under the will, it was certainly discretionary with the executor, after obtaining court approval, to liquidate a portion of the estate at an early date.

The factors which show undeniably that the interest in shares sold was that of the estate alone are the petition and order for partial

distribution of the estate. The order of the court stated that "said Rose B. Larson is entitled, as her share of community property, to receive from said executor, upon the closing of said estate, a total of 105,487 shares." Since the entire community interest in the Sunshine Mining Co. shares aggregated 210,974 shares, the court's order indicates that one-half of the original number of shares was treated as the property of petitioner after the sale of 85,000 shares had been made. We consider the court's order a finding behind which we can not inquire. The Probate Court's determination, as evidenced by its order, must be binding as to which interest was disposed of by the options and sales. *Helvering* v. *Rhodes*, 117 Fed. (2d) 509. See *Mildred M. Hubbard*, 30 B. T. A. 619. Accordingly, we hold that no portion of the 85,000 shares optioned and sold by the executor of decedent's estate was sold from petitioner's interest. Respondent's determination was erroneous and is hereby overruled.

In connection with this issue respondent has urged an alternative contention that, in the event we find that the shares sold were not petitioner's, then she must be taxed upon dividends paid on her stock subject to administration. In the first issue we held that dividends paid on petitioner's stock in the hands of the executor were not taxable to petitioner while the stock was subject to administration. That issue disposes of respondent's alternative contention here.

The final issue is whether or not petitioner is entitled to a deduction for interest paid in the sum of $1,901.96. Respondent contends that the obligations upon which the interest was paid were incurred by petitioner's son and that the interest is not deductible by petitioner. He argues that petitioner voluntarily satisfied the obligations of another.

Petitioner's obligation as comaker of the notes was both joint and several. The notes were at all times her personal obligations and amounts paid by her as interest must be considered interest paid on her indebtedness. *George A. Neracher*, 32 B. T. A. 236. Nor does the fact that petitioner later made a gift to her son of the amount borrowed change the result. Petitioner, however, has proved payment of only $1,551.96 as interest. Mere accrual of $350 interest does not give rise to a deduction in that amount to a taxpayer on a cash basis. We hold that respondent should have allowed petitioner a deduction of $1,551.96 for interest paid in the taxable year.

Upon recomputation we shall give effect to the stipulations filed at the hearing disposing of issues relating to Docket No. 88814 and the issues relating to Docket No. 88813 for the year 1933.

*Decision will be entered under Rule 50.*