ESTATE OF BESSIE A. WOODWARD, W. B. BARNHILL, JOHN F. DILLARD AND J. A. PHILLIPS, TRUSTEES, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ESTATE OF EMERSON F. WOODWARD, W. B. BARNHILL, JOHN F. DILLARD AND J. A. PHILLIPS, TRUSTEES, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 37080, 37081. Filed August 11, 1955.

*W. J. Knight, Esq.*, for the petitioners.
*W. B. Riley, Esq.*, for the respondent.

OPINION.

LeMire, *Judge:* The first question presented is whether the income from property previously belonging to the marital community in Texas earned during the period of administration is taxable in its entirety to the estate of the surviving husband, or, in the alternative, entirely to the estate of the wife; or whether it is taxable one-half to each estate, as contended by the petitioners.

The respondent relies upon *Barbour* v. *Commissioner*, 89 F. 2d 474, as controlling our decision here. This Court has adhered to the view that an estate of a deceased spouse during administration, whether the deceased be the husband or wife, is taxable only on one-half of the income from Texas community property. *Estate of J. T. Sneed, Jr.*, 17 T. C. 1344, affd. 220 F. 2d 313. On the basis of this most recent decision, we sustain the petitioners on this issue.

. The second question presented is whether the petitioners are entitled to deductions for amortizable bond premium on certain bonds of the Government of the Dominion of Canada in the taxable periods in question. No deductions were claimed on the income tax returns filed by the respective estates for amortizable bond premiums.

It is conceded that under section 23 (v) of the 1939 Code petitioners would be entitled to the bond premium deduction provided in section 125 of the 1939 Code if the Treasury Regulations adopted pursuant to the latter section had been complied with. The amounts of such deductions for the respective taxable periods have been stipulated. Subsections (a) (1) and (c) (1) and (2) of section 125 of the Code and Regulations 111, section 29.125-4, pertinent here, are set forth in the margin.[1] Section 125 (c) (2) provides that the election author-

---

[1] SEC. 125. AMORTIZABLE BOND PREMIUM.

(a) GENERAL RULE.—In the case of any bond, as defined in subsection (d), the following rules shall apply to the amortizable bond premium (determined under subsection (b)) on the bond for any taxable year beginning after December 31, 1941:

(1) INTEREST WHOLLY OR PARTIALLY TAXABLE.—In the case of a bond (other than a bond the interest on which is excludible from gross income), the amount of the amortizable bond premium for the taxable year shall be allowed as a deduction.

* * * * * * *

(c) ELECTION ON TAXABLE AND PARTIALLY TAXABLE BONDS.—

(1) ELIGIBILITY TO ELECT AND BONDS WITH RESPECT TO WHICH ELECTION PERMITTED.—This section shall apply with respect to the following classes of taxpayers with respect to the following classes of bonds only if the taxpayer has elected to have this section apply.

* * * * * * *

(2) MANNER AND EFFECT OF ELECTION.—The election authorized under this subsection shall be made in accordance with such regulations as the Commissioner with the

ized shall be made in accordance with such regulations as the Commissioner, with the approval of the Secretary, shall prescribe.

The petitioners made no election in the manner prescribed in any of the returns filed for the taxable years involved, but subsequently filed claims for refund based upon deductions for amortizable premiums claimed for each year. The petitioners contend that the regulation prescribing the time and manner of exercising the election is unreasonable and arbitrary as applied to them. The primary argument advanced against the validity of the regulation is the requirement that the election be made in the return for the first taxable year to which he desires the election to be applicable. The time for filing income tax returns expired as to each estate on July 15, 1944. At the request of the petitioners the time was extended to July 25, 1944. The time for filing the estate tax return in the Estate of Bessie A. Woodward expired on August 23, 1944, and in the Estate of Emerson F. Woodward on August 24, 1944. Both estate tax returns were filed on August 22, 1944. It is said that since the estate tax returns of the petitioners were not due until the fifteenth month following the dates of death, and by virtue of section 811 (j) they had the election to value the estates as of the date of 1 year after the decedents' deaths, that to comply with the regulations requiring the election to be made for the first taxable year's return would have compelled the petitioners to value the bonds for estate tax purposes as of a date prior to the time allowed by section 811 (j) of the Code, which date established the basis for determining amortizable bond premium. The fact that the election as to the optional date for valuation is not required to be made until the estate tax return is due, does not extend the valuation dates fixed by statute. The last date for valuing the bonds for estate tax purposes in the estate of the surviving decedent was May 25,

approval of the Secretary shall prescribe. If such election is made with respect to any bond (described in paragraph (1)) of the taxpayer, it shall also apply to all such bonds held by the taxpayer at the beginning of the first taxable year to which the election applies and to all such bonds thereafter acquired by him and shall be binding for all subsequent taxable years with respect to all such bonds of the taxpayer, unless, upon application by the taxpayer, the Commissioner permits him, subject to such conditions as the Commissioner deems necessary, to revoke such election. * * *

Sec. 29.125–4. Election.—In the case of a corporation, the election provided in section 125 may be made only with respect to fully taxable bonds. In the case of a taxpayer other than a corporation, the election provided in such section may be made with respect to (a) fully taxable bonds only, or (b) partially tax-exempt bonds only, or (c) both fully taxable bonds and partially tax-exempt bonds. Such election shall be made by the taxpayer by claiming a deduction for the bond premium in his return for the first taxable year to which he desires the election to be applicable. No other method of making such election is permitted. If the election is so made, the taxpayer should attach to his return a statement showing the computation of the deduction. The election shall apply to all bonds in respect of which it was made owned by the taxpayer at the beginning of the first taxable year to which the election applies and also to all bonds of such class (or classes) thereafter acquired by him, and shall be binding for all subsequent taxable years. Upon application by the taxpayer, the Commissioner may permit him to revoke the election, subject to such conditions as the Commissioner deems necessary. In the case of bonds owned by a partnership, common trust fund, or foreign personal holding company, the election shall be exercisable by such partnership, common trust fund, or foreign personal holding company.

1944. The first income tax return in each estate was not due until July 25, 1944, or 2 months after the optional valuation date. In the light of such facts this contention of the petitioners lacks substance.

The petitioners did not make an election to take amortizable bond premium deductions in any of the income tax returns filed for the periods in question. On June 9, 1948, each estate filed claims for refund for the taxable periods ended April 30, 1944, and April 30, 1945. The period of limitation for assessment had been kept open by successive waivers to June 30, 1952. The respondent made his final determinations of tax liability on July 11, 1951. It is now contended by the petitioners that the filing of timely claims for refund constituted an effective and timely election to take the amortization of bond premium deduction. We have considered the authorities relied upon by the petitioners in support of their position and we regard them as inapplicable to the facts and circumstances presented here, or they are factually distinguishable.

Whether a transaction or result is taxable is a matter of statutes and valid regulations, and what they mean. *Jeffries* v. *Commissioner*, 158 F. 2d 225; *Trust Co. of Georgia* v. *Allen*, 164 F. 2d 438. To uphold the argument of the petitioners would be to rewrite the regulations, which responsibility is specifically imposed by the statute upon the respondent. Our function is to determine whether the regulation in controversy is a reasonable and proper exercise of the duty prescribed by section 125 of the Code.

We are dealing here with a regulation which the statute expressly commands to supplement the law. Such regulations are to be accorded greater weight than those of an interpretive character. Regulations promulgated pursuant to directions contained in a particular law have the force and effect of law unless they are in conflict with the express provisions of the statute. Such regulations unless clearly arbitrary and unreasonable are to be strictly adhered to. *Santa Monica Mountain Park Co.* v. *United States*, 99 F. 2d 450; *Ruud Manufacturing Co.*, 10 T. C. 14, affd. 173 F. 2d 222.

The fact that section 125 has been amended since the promulgation of the regulations without altering or amending the provisions of subsection (c) (2) is indicative of congressional approval of the regulation. *Helvering* v. *Winmill*, 305 U. S. 79.

The purpose of the enactment of section 125 of the 1939 Code was to correct inequitable treatment then existing with respect to certain types of bondholders. The statute requires an election and provides that if exercised it applies to all such bonds and all after-acquired bonds for all subsequent taxable years. The privilege to elect to claim a deduction for amortization of bond premium is an option. The deduction, if claimed, reduces the basis of the bonds. A taxpayer's choice may have varying tax consequences in subsequent

years. One of the purposes of the regulation is to prevent a taxpayer delaying his determination to see which method would be most profitable. The burden of deciding the more advantageous course rests upon the taxpayer, who must suffer the consequences of unforeseen contingencies or errors of judgment in its exercise. *Burke & Herbert Bank & Trust Co.*, 10 T. C. 1007, 1009.

The record contains evidence to the effect that the executors or trustees intended to hold the Canadian bonds as an investment until their maturity or earlier call date. It would, therefore, presumably have been advantageous to have claimed amortization of the premium in the first income tax return. However, the regulation must be viewed in the light of its application to taxpayers generally. If, as the petitioners contend, they were relying upon the fact that the estate tax return had not been filed when the first income tax was due, no explanation has been advanced for the failure to make the election in the first return filed after the filing of the estate tax return.

In our opinion, the regulation in question is not in conflict with the provisions of section 125, but is a reasonable and appropriate one to accomplish the purposes of the statute and to carry out the duty imposed upon the respondent. Its validity is sustained.

The petitioners contend that the filing of timely claims for refund should be considered as an election within the scope of the regulation.

It is specifically provided in the regulation that no other method is permitted. A statutory requirement that a thing be done in a specified manner bars any other method. *Botany Worsted Mills* v. *United States*, 278 U. S. 282. Since we hold the regulation to be valid, to recognize the claims for refund as an effective election would thwart the purposes of the regulation. We, therefore, hold that such deductions for amortizable bond premium in the taxable years may not be taken into account in a redetermination of the income tax liabilities of the respective petitioners. Other adjustments made by the respondent are not contested.

*Decisions will be entered under Rule 50.*