MAXINE T. GRIMM, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 40673-84.          Filed October 6, 1987.

*Bert B. Rand*, for the petitioner.
*Joel A. Lopata*, for the respondent.

OPINION

GERBER, *Judge*: Respondent determined deficiencies in petitioner's Federal income tax liabilities for 1978, 1979,

and 1981, in the amounts of $289,958, $217,555, and $32,999, respectively. The issues for our consideration are: (1) Whether 50 percent of community income, all of which was received by decedent's estate, is taxable to petitioner when received by petitioner's husband's estate; and (2) whether the statute of limitations on assessment of a deficiency has expired for the taxable year 1978.

At the time of filing the petition in this case, petitioner resided in Tooele, Utah. This case was submitted for decision on fully stipulated facts pursuant to Rule 122.[1] The stipulation of facts and attached exhibits are incorporated by this reference.

Petitioner filed a Federal income tax return for the 1978 taxable year on June 18, 1979. An amended return was filed for this taxable year on April 20, 1982, and a second amended return was filed on May 7, 1982. On January 19, 1981, petitioner filed an income tax return for the taxable year 1979. An amended return for this taxable year was filed on April 15, 1983. Petitioner filed a tax return for the 1981 taxable year on October 15, 1982.

On March 21, 1983, petitioner and respondent executed a written agreement pursuant to the provisions of section 6501(c)(4) extending the period for the assessment of tax due for the taxable year 1979.

In 1945, petitioner, an American citizen, married Edward M. Grimm (decedent or spouse), also an American citizen, who resided in the Philippines from 1919 until his death on November 27, 1977. Petitioner resided in Manila, the Philippines, as wife of decedent, from 1945 until 1981. During his residence in the Philippines, decedent, a business executive, accumulated great wealth in the form of real estate, stocks and bonds, and other property, located both in the State of Utah and the Philippines. Because petitioner and her spouse were domiciled in the Philippines, upon the death of either petitioner or her spouse, Philippine law governed the disposition of the property they acquired during their marriage. The Civil Code of the Philippines defines the relationship between a married couple as a

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended and in effect during the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.

"conjugal partnership," a concept analogous to the community property laws of several States in the United States, including the State of Washington.

On May 28, 1976, the "conjugal partnership" of petitioner and decedent acquired the right to installment payments from the Everett Steamship Corp., S.A. (Everett). These payments represented the redemption price of 255 shares of Everett stock, issued in decedent's name and redeemed by Everett on May 28, 1976. The purchase price was payable in five annual installments, with the first payment due on or before June 30, 1976, and the fifth and final payment due on or before June 30, 1980. The first and second payments were made prior to decedent's death, and the remaining three payments were made in June 1978, 1979, and 1980, respectively, to the personal representatives of decedent's estate. Each of the final three payments was in the amount of $984,092.31, for a total of $2,952,276.93.

After her husband's death, petitioner returned to the United States and established permanent residence in the State of Utah. On February 3, 1978, petitioner, as decedent's surviving spouse, petitioned the Third Judicial District Court of Tooele County, Probate Division, for a formal probate of decedent's will, and appointment of personal representatives of decedent's estate. The court, on April 10, 1978, issued an order for the formal probate of decedent's estate and appointed petitioner and her brother, E. LaVar Tate, of Tooele, Utah, as the personal representatives. Under this order, petitioner and her brother had the same fiduciary duties and limitations of any other personal representative, with the exception of the following limitation which the court placed on their power:

Until further order of the Court, *the authority and power of the Supervised Personal Representatives*, E. LaVar Tate and Maxine Tate Grimm *is limited and restricted to dealing with the real and personal property of the Decedent*, Edward M. Grimm, *which is located in the State of Utah, or in the United States of America and within the jurisdiction of the Third Judicial District Court of Tooele County*, State of Utah, and to representing the estate in matters pending before the Internal Revenue Service or before the Tax Court of the United States. [Emphasis added.]

Most of the assets of decedent's estate, with the major exception of the payments due from Everett, were placed in a trust established prior to decedent's death.

Decedent's estate filed a U.S. estate tax return. A marital deduction in the amount of $3,530,751.76, fifty percent of the adjusted gross estate, was claimed by the estate. Additionally, decedent's estate filed U.S. fiduciary income tax returns for its fiscal years ending May 3, 1979,[2] through May 31, 1981, reflecting Distributable Estate Income (DEI) allocated to petitioner as follows:

*FYE May 31—*

|  |  |  |  |
|---|---|---|---|
| 1979 |  |  | $267,056 |
| 1980 |  |  | 33,000 |
| 1981 | Sec. 1248 dividend | $16,074 |  |
|  | Interest | 81,156 |  |
|  | Other dividend | 1,690 |  |
|  | Long-term gain | 206,202 |  |
|  |  |  | 305,122 |

During its fiscal years ending May 31, 1978 through 1982, the estate made payments on account of Federal fiduciary income tax, Federal estate tax, Utah State inheritance tax, and Federal income tax deficiencies and interest for the years 1956 through 1964, inclusive, as follows:

*Year ended May 31, 1980*

| (a) Aug. 27, 1979 | $200,000.00 | Estate tax |
|---|---|---|
| (b) Sept. 15, 1979, through Apr. 15, 1980 | 575,348.29 | Deficiencies, including interest, on joint income of petitioner and decedent (paid with petitioner's consent) |

*Year ended May 31, 1981*

| (a) Oct. 14, 1980 | $216,902.00 | Estate tax |
|---|---|---|
| (b) Oct. 15, 1980 | 15,802.00 | Fiduciary income tax |

*Year ended May 31, 1982*

| (a) Oct. 9, 1981 | $216,902.00 | Estate tax |
|---|---|---|
| (b) Dec. 3, 1981 | 221,749.49 | Inheritance tax |
| (c) Mar. 15, 1982 | 6,219.00 | Fiduciary income tax |

Petitioner received payments from decedent's estate as follows:

[2]The parties stipulated May 3, 1979, as the fiduciary return's fiscal year, but it appears possible that May 31, 1979, was intended. This possible variation would not affect the outcome of this case.

| 1978 | 07/10/78 | $36,571.23 | (Repayment of funds advanced to the estate by petitioner) |
|------|----------|------------|------------------------------------------------------------|
| 1979 | 04/16/79 | 36,000.00 | (Described as widow's allowance) |
|      | 05/18/79 | 18,000.00 | (Described as widow's allowance) |
|      | 05/23/79 | 400,000.00 | |
| 1980 | 04/15/80 | 33,000.00 | (Described as widow's allowance) |
|      | 06/24/80 | 802,913.56 | |
|      | 03/15/80 | [1]87,913.00 | |
|      | 04/15/80 | | |
|      | 10/14/80 | | |

[1]This amount represents 50 percent of the deficiencies, plus interest, due on the joint income of petitioner and decedent for years 1956 through 1964, inclusive.

Petitioner reported income composed of DEI and payments from Everett (ESC) for the years in issue as follows:

| 1978 | | None |
|------|--|------|
| 1979 | ESC sale | $78,685 |
|      | DEI | 267,056 |
| 1980 | ESC sale | 412,323 |
|      | DEI | 289,368 |
| 1981 | ESC sale | None |
|      | DEI | |
|      | Sec. 1248 dividend and interest | $97,230 |
|      | Other dividend | 1,690 |
|      | Long-term gain | 206,202 |

Both parties agree that when the payments from Everett are reportable for Federal income tax purposes, they should be reported as follows:

| Everett post-death payments | Date of payment | Principal portion of payment | Gross profit | Taxable amount | Estate | Petitioner |
|-----------------------------|-----------------|------------------------------|--------------|----------------|--------|------------|
| $984,092 | 6/29/78 | $831,032 | 87.3526% | $725,928 | $362,964 | $362,964 |
| 984,092 | 6/06/79 | 831,032 | 87.3526 | 725,928 | 362,964 | 362,964 |
| 984,092 | 6/06/80 | 831,032 | 87.3526 | 725,928 | 362,964 | 362,964 |

| | Interest portion of payment | | | | | |
|--|------------------------------|--|--|--|--------|--------|
| | $153,060 | | | | $76,530 | $76,530 |
| | 153,060 | | | | 76,530 | 76,530 |
| | 153,060 | | | | 76,530 | 76,530 |

Additionally, the taxable amount of the principal portion of the last payment would be divided between capital and dividend as follows:

|  | $725,928 | $362,964 | $362,964 |
| --- | --- | --- | --- |
| Sec. 1248 capital | 321,117 | 160,558 | 160,558 |
| Sec. 1248 dividend | 404,811 | 202,405 | 202,405 |

In the notice of deficiency, dated September 11, 1984, respondent made the following adjustments to petitioner's income for the years in issue:

|  | 1978 | 1979 | 1981 |
| --- | --- | --- | --- |
| Per return | 0 | $78,685 | $1,690 |
| As audited | $362,964 | 362,964 | 119,177 |
| Adjustment | 362,964 | 284,279 | 117,487 |

Respondent also determined that 50 percent of the interest income received from the Everett payment for years 1978 and 1979 should be reported by petitioner, therefore, respondent increased petitioner's income by an additional $76,530 in each of those years. The long-term capital gain shown on petitioner's tax return for the taxable year 1981 was decreased in the amount of $41,242.

*Issue 1 — Everett Payments*

Respondent contends that petitioner must include in her gross income one-half of each Everett payment, in the year received by the estate, because the "conjugal partnership" between petitioner and decedent terminated upon decedent's death, thus creating in petitioner the exclusive right to one-half of the remaining payments. Petitioner argues that no portion of the Everett payments was includable in her income until she obtained control and dominion over an ascertainable portion, i.e., the funds were either distributed to her or paid out on her behalf. Petitioner bases her argument on the premise that the "conjugal partnership" was not yet dissolved when the payments were received by the estate. Rather, the estate received the payments as the agent of the partnership and was required to hold such funds, on the partnership's behalf, until the assets and liabilities of the "conjugal partnership" were inventoried and liquidated. Petitioner maintains that until this was

completed, she held a mere expectancy to an unqualified sum. We disagree.

Both parties agree that there is no substantial difference between Philippine community property law and the community property law of several States within the United States, more specifically the State of Washington.[3] Therefore, in resolving the issue of taxability of the surviving spouse's interest in community income when such income is paid to the executors of the deceased spouse's estate during its administration, we will place reliance upon the laws of the community property States of the Ninth Circuit, more specifically, the State of Washington.[4]

It is well established that income is taxed to the person who owns it. *Lucas v. Earl*, 281 U.S. 111 (1930); *Helvering v. Horst*, 311 U.S. 112 (1940). The controlling factor in determining the owner, for tax purposes, is who has actual control over the income. Mere refinement of title or receipt of the income is of little importance. *Corliss v. Bowers*, 281 U.S. 376 (1930).

In community property States, however, the nonearning spouse is considered to be the owner of one-half of the community income, and such income is taxed to this spouse. See *Poe v. Seaborn*, 282 U.S. 101 (1930); *Goodell v. Koch*, 282 U.S. 118 (1930); *Hopkins v. Bacon*, 282 U.S. 122 (1930); *Bender v. Pfaff*, 282 U.S. 127 (1930). Similarly, under the laws of the Philippines, which the parties have stipulated are analogous to the community property laws of several States of the United States, and more specifically, the State of Washington,[5] each spouse is considered, for Federal income tax purposes, to have an equal ownership interest in

[3]In *Helvering v. Campbell*, 139 F.2d 865, 870 (1944), the Fourth Circuit stated "the interest of the spouses in community property in the Philippines is not substantially different, we think, from that in the State of Washington, dealt with by the Supreme Court in *Poe v. Seaborn*, 282 U.S. 101 (1930)." We think this has greatly influenced the parties in specifying the State of Washington as a State that has community property laws analogous to the community property laws of the Philippines.

[4]We have not found any substantial differences between the community property laws of Washington and other community property States of the Ninth Circuit, more specifically, the State of California.

Although an appeal from this case would lie in the Tenth Circuit, we have found no precedent in that circuit which is helpful in the resolution of the issue under consideration.

[5]Philippine law uses the term "conjugal property" instead of community property. Because we have determined that these terms have the same meaning, we use them interchangeably for purposes of our determination.

the property of the "conjugal partnership."[6] See *Parsons v. Commissioner*, 43 T.C. 331 (1964); *United States v. Stonehill*, 702 F.2d 1288 (9th Cir. 1983); *Helvering v. Campbell*, 139 F.2d 865 (4th Cir. 1944).

Petitioner argues that at the time of her husband's death she held a mere right to her share of the net remainder of the community property which ripened into title only upon the liquidation and settlement of decedent's estate. Petitioner's argument is without merit. The nature of the spouse's right to community property under the laws of the Philippines was considered by the Court of Appeals of the Ninth Circuit in *United States v. Stonehill, supra.* In that case, the Court concluded that under Philippine law each spouse has an immediate vested one-half interest in the community property, and as such, each spouse was taxable on one-half of the community income. We hold, therefore, that petitioner had an immediate vested right to one-half interest in the community property, including the Everett payments due after decedent's death.

Petitioner contends that even if at her husband's death she was possessed of this right, Philippine law requires that, at the time of death of either spouse, all community property must be paid into the estate to be inventoried, administered, and liquidated in the testate or intestate proceeding and used, as necessary, to pay the debts of the estate, including tax liabilities. Therefore, petitioner argues that the custody and administration of her claimed share of community property, including the Everett payments, became a part of her husband's estate and was subject to its fiduciary obligations. We disagree.

At the outset, we think it is critical to emphasize the distinction between decedent as a partner of the "conjugal partnership," and decedent's estate. Decedent, solely by reason of his marital status, became a partner of the "conjugal partnership" as created by law. Any change in decedent's marital status (death or divorce) terminates his participation in the partnership, and the partnership terminates with respect to both members. Decedent's estate

---

[6]Property of the "conjugal partnership" includes income produced by other community property as well as salaries of either spouse.

comes into being upon his death, and after the "conjugal partnership" has been created and then terminated. Decedent's estate is merely the aggregation of all property interests owned by him prior to the distribution of such property interests in accordance with the terms of a will, or by the laws of inheritance in the location of decedent's domicile. The estate does not acquire ownership or an interest in property not owned by decedent prior to his death.

Under Philippine law, the termination of the "conjugal partnership" is governed by article 175 of the Civil Code, which provides as follows:

Article 175

The causes for dissolution are (1) death of either spouse; (2) legal separation; (3) annulment of marriage; and (4) judicial separation of property. De facto separation between husband and wife does not affect the conjugal partnership.[7]

The procedure to be taken with respect to the liquidation of the "conjugal partnership" is set forth in article 179, as follows:

Upon the dissolution of the conjugal partnership (Art. 175), an inventory must be prepared. The inventory is required to form a basis for liquidation and should include only properties existing at the time of the death of the spouses, except when the husband has been entrusted with the administration of the wife's paraphernal property, in which case such property should be included in the inventory for the restitution thereof * * *

The steps to be followed in liquidating the partnership are set forth in articles 181, 182, and 185. The pertinent provisions of these sections are stated below.

Article 181 provides as follows:

The first deduction from the conjugal estate is the payment of the paraphernal property of the wife [property brought to the marriage by

---

[7]Art. 175 is annotated by the citation of rule 73, sec. 2, issued by the Philippine Court in implementing art. 175. Rule 73, sec. 2, provides as follows:

*Where estate settled upon dissolution of marriage.—*

When the marriage is dissolved by the death of the husband or wife, the community property shall be inventoried, administered, and liquidated, and the debts thereof paid, in the testate or intestate proceedings of the deceased spouse. If both spouses have died, the conjugal partnership shall be liquidated in the testate or intestate proceedings of either.

the wife or property acquired later by the sale or exchange of such property] * * *

## Article 182 states:

After returning the paraphernal property of the wife (Art. 181), the conjugal partnership properties must answer for all the debts and obligations chargeable to the conjugal partnership [debts and obligations contracted by the husband (Art. 161) for the benefit of the conjugal partnership] * * *

## Article 185 provides:

The net remainder of the conjugal partnership of gains shall be divided equally between the husband and the wife or their respective heirs, unless a different basis of division was agreed upon in the marriage settlements.

Petitioner contends that under Philippine law, the property of the partnership became subject to the administration of decedent's estate and, therefore, the estate received the payments as the agent for the partnership and was required to hold the funds in this capacity until the complete liquidation of the "conjugal partnership."[8] We disagree.

Under the Civil Code of the Philippines the "conjugal partnership" between petitioner and decedent terminated upon decedent's death. Although the community property, upon termination of the "conjugal partnership," became subject to the . administration of decedent's estate, the estate's claims against this property were limited to outstanding community debts, i.e., debts incurred for the benefit of the "conjugal partnership."[9] Upon decedent's death, the "conjugal partnership" did not become an integral part of, nor was it absorbed by, decedent's estate. Rather, decedent's estate was intended to be a separate

---

[8]Although it is somewhat unclear from the briefs, petitioner seems to make the argument that even though the community partnership between petitioner and decedent was terminated by decedent's death, a new relationship arose with respect to petitioner's interest in the community income—the executors of decedent's estate became the statutory trustee of petitioner's interest. This argument will be addressed as we examine the role of the executors of decedent's estate with respect to petitioner's interest in the community income.

[9]Art. 161, Civ. Code Ann., provides in pertinent part as follows:

The conjugal partnership shall be liable for:

(1) All debts and obligations contracted by the husband for the benefit of the conjugal partnership, and those contracted by the wife, also for the same purpose, in the cases where she may legally bind the partnership; * * *

taxable entity with debts separately attributable to it.[10] The terminated, but unliquidated "conjugal partnership" was subject to the administration of decedent's estate for the sole purpose of satisfying community debts; it did not become an extension of decedent's estate. There is a distinction between wrapping up the affairs of the "conjugal partnership" (complete liquidation) and administering the deceased spouse's estate.

We must now determine what effect, if any, the receipt of the community income by the executors of decedent's estate had on the taxation of such income with respect to petitioner. The issue of taxing community income received by executors of the deceased spouse's estate, during its administration, has been addressed by this Court and the appellate courts of both the Fifth and Ninth Circuits. However, none of the cases dealt specifically with Philippine community property. Because the parties have stipulated that the community property law of the Philippines is not substantially different from the community property law of several States of the United States, and more specifically, the State of Washington, the analysis of these cases will be applied to the instant case. We give greater weight to the law within the jurisdiction of the Court of Appeals for the Ninth Circuit.

This issue was addressed by the Ninth Circuit in three cases which span a period from 1942 to 1954.[11] The law in the Ninth Circuit on this issue is clear and definitive despite some inconsistencies during its development.

The Ninth Circuit first addressed this issue in *Larson v. Commissioner*, 131 F.2d 85 (9th Cir. 1942), affg. 44 B.T.A. 1094 (1941). In *Larson*, the husband, a resident of the State of Washington, died leaving a surviving wife and substantial community property. During the administration of the husband's estate the executor of the estate received income for the payment of dividends, interest, rental, and profits from the community property. The question raised by the

---

[10]This distinction is supported by the language of art. 186, Civ. Code Ann., which provides that the mourning apparel of the widow shall be paid for out of the estate of the deceased husband. Art. 188 also provides that the surviving spouse and minor children shall receive an allowance from the deceased person's estate.

[11]See *Larson v. Commissioner*, 131 F.2d 85 (9th Cir. 1942); *Bishop v. Commissioner*, 152 F.2d 389 (9th Cir. 1945); *United States v. Merrill*, 211 F.2d 297 (9th Cir. 1954).

petition was framed as whether the income from community property in the hands of the executor of the husband's estate was taxable in its entirety to the estate, or whether one-half of such income was taxable to the surviving spouse. The Court held that, in the State of Washington, upon the death of a spouse the entire community estate, and not merely the half interest of the deceased spouse, is subject to administration. Therefore, during the period of administration of the estate, the ownership of the income from community property was in the executor or administrator. Consequently, the executors of the estate should report all the community income in the estate's return for the period of receipt of such income.

This issue was brought before the Ninth Circuit again in *Bishop v. Commissioner*, 152 F.2d 389 (9th Cir. 1945), revg. 4 T.C. 588 (1945).[12] In *Bishop*, the couple resided in the State of California. After the husband's death and during the administration of his estate, the executor of his estate collected community income in the form of dividends and interest. There the Court, in resolving the taxation of this income, found that under California law, the entire community property was subject to the administration of the deceased spouse's estate, but the widow's half of the community property continued to belong to her after her husband's death. Accordingly, the Court held that the surviving wife was taxable on her half of the income.

The issue with respect to Washington law was once again brought before the Ninth Circuit in *United States v. Merrill*, 211 F.2d 297 (9th Cir. 1954). In *Merrill*, it was brought to the court's attention that there was no real difference between the law decided in *Larson* (Washington) and the law decided in *Bishop* (California). The court, agreeing with this observation stated:

It appears, then, that the *Bishop* case cannot be distinguished from the *Larson* case on the basis of differences in the laws of Washington and California. As noted, the conflict between those cases is on the question whether the estate of the deceased spouse should be regarded for income tax purposes as embracing the whole of the community property, as the *Larson* case holds, or whether the surviving spouse is the proper taxable person with respect to one-half thereof, as held in the *Bishop* case. On

[12]In *Bishop* we relied on and followed the Ninth Circuit's opinion in *Larson*. 4 T.C. 588, 590-591.

this question we think the *Bishop* case was correctly decided and is controlling here. The *Larson* decision was based in part upon the view that in Washington an executor has title to the personal property in his charge, a view which the late Washington decisions indicate is erroneous * * * . And in the *Larson* case we gave undue emphasis to the powers of the executor of the estate of a deceased spouse with reference to the community property and the income therefrom during the period of administration, and insufficient attention to the community property law of the state. The *Larson* case was stripped of its force by the reasoning of the *Bishop* case and should not be followed.

As we recognized in both *Larson* and *Bishop*, the question as to who is taxable upon income depends upon who is the owner of the income, and that for purposes of determining ownership, the community property law of the state of the domicile is controlling. As noted above, the law of Washington is that on the death of one member of the marital community the surviving spouse *continues to own* a one-half share of the community property. Such share is not a part of the decedent's estate. For practical reasons the survivor's share is subject to administration along with that of the decedent, but, * * * the indefeasible title of the survivor does not pass into an eclipse pending the settlement of the decedent's estate. His interest is the same as it was prior to his wife's death, and he, not the estate, is the proper taxable person with respect to such interest. [*United States v. Merrill, supra* at 301-302. Emphasis in original; citations omitted.]

Under the prevailing law of the Ninth Circuit, one-half of community income received by the executor of the deceased spouse's estate during the administration of the estate is taxable to the surviving spouse.

We will now examine the development of the law on this issue in the Fifth Circuit. The Fifth Circuit has faced this issue in four cases which span a period of time from 1937 to 1952.[13] During this time, the evolution of the law on this issue has been unclear and inconsistent. The final outcome in the Fifth Circuit is that the surviving spouse has the option of reporting or not reporting one-half the community income.

This issue was first addressed by the Court of Appeals for the Fifth Circuit in *Barbour v. Commissioner*, 89 F.2d 474 (5th Cir. 1937). In *Barbour*, community shares of stock were sold after the spouse's death and all sale proceeds were collected and reported by the deceased spouse's estate. The Commissioner rejected this method of reporting the

---

[13]See *Barbour v. Commissioner*, 89 F.2d 474 (5th Cir. 1937); *Henderson's Estate v. Commissioner*, 155 F.2d 310 (5th Cir. 1946); *Blackburn's Estate v. Commissioner*, 180 F.2d 952 (5th Cir. 1950); *Estate of Sneed v. Commissioner*, 220 F.2d 313 (5th Cir. 1955).

gain and determined that one-half of the income received by the estate was taxable to the surviving spouse. The Fifth Circuit, in reversing the Board of Tax Appeals which sustained the Commissioner's argument, held that in Texas during the administration of an estate of a deceased husband the administrators of the estate had control of the community property to pay community debts. The court regarded the administrators as having a dual status, first as administrators of the estate and second as trustees for the benefit of creditors and the surviving spouse. Thus, the court held that the recipients of the income, either as executors of the husband's estate or as statutory trustees for the benefit of the creditors and others entitled to the income, received the profit, and the executors, not the surviving spouse, should "account for and pay the taxes on [the income]."[14]

This issue was revisited by the Court of Appeals for the Fifth Circuit in *Henderson's Estate v. Commissioner*, 155 F.2d 310 (5th Cir. 1946), revg. 4 T.C. 1001 (1945). In *Henderson*, the estate of the deceased husband was composed, in part, of community property, and there were community debts outstanding. There the surviving spouse filed a separate return, on her behalf, reporting one-half of the income arising from previously existing community property, during the administration of the deceased husband's estate. The Commissioner challenged this method of reporting and argued that income received by a decedent's estate during the course of administration shall be taxed to the estate and paid by the fiduciary. The Court, after carefully examining the nature of the surviving spouse's interest with respect to such income,[15] held that the

---

[14]The court, in reaching its decision, relied upon an earlier decision in *Kuldell v. Commissioner*, 69 F.2d 739 (5th Cir. 1934), affg. 25 B.T.A. 800 (1932). In that case, the court held that income received by the administrator of an estate, while the administration is in progress, must be returned and taxes paid on it, by the administrator, as income of the estate, and not by the person ultimately entitled to it.

The holding of *Barbour* suggests that the vested interest of the surviving spouse passes into a hiatus during the administration of the deceased spouse's estate. Consequently, during the administration of the estate any community income would be taxed either to the estate or the purported trusteeship. Upon receipt of the income by the rightful owner, the income is taxed a second time. This treatment is correct with respect to an interest passing from the decedent to the ultimate beneficiary. It is flawed, however, with respect to *property that is owned by someone other than the decedent.*

[15]The Court of Appeals for the Fifth Circuit, in making its determination, addressed such questions as: (1) Who is the real owner of the widow's share of community income received by

surviving wife, who was the owner of one-half of the income prior to the husband's death, continued to own the income after the husband's death and was taxable on her half of the income.[16] There the Court, reconciling its holding with *Barbour*, stated:

Undue significance has been given to the process of administration. While the decedent's estate was being administered, the widow's half of the community property was being held by the executors as agents or trustees. That it might be sold in the manner provided by law to pay community debts was the only contingency attached to her otherwise indefeasible title. In this limited sense only was it contingent or residuary. As said by the Supreme Court of Louisiana: "The surviving spouse receives the property just as another proprietor receives title burdened with debts." [*Henderson's Estate v. Commissioner, supra* at 312.]

The Fifth Circuit was required to face this issue, with respect to Texas law, once again in *Blackburn's Estate v. Commissioner*, 180 F.2d 952 (5th Cir. 1950), affg. in part and revg. in part 11 T.C. 623 (1948). The issue in *Blackburn* was brought before this Court initially, and we held, based on the *Barbour* decision, that all the community income was taxable to the deceased spouse's estate.[17] The Fifth Circuit reversed our holding on this issue, pointing out that *Blackburn* involved a deceased wife, whereas *Barbour* involved the death of a husband. The Fifth Circuit held that under Texas law, the surviving husband's interest in the community property was undiminished by his wife's death,

---

the decedent's estate? (2) Does the indefeasible title of the widow pass into an eclipse pending settlement of the husband's succession? (3) Do the personal representatives of the husband have a better title than he himself had? and (4) Does the authority of agents exceed that of their principal? In addressing these questions the court noted that both the Supreme Court of Louisiana and of the United States have held that the wife's one-half interest is not a mere expectancy during the marriage but vests in her upon the acquisition of the property. The court went on to note that both courts have compared the wife's interest to that of a partner in the property of a partnership, the affairs of which have been entrusted to a managing partner. Upon the death of the husband, the court noted, the wife's title in the property is enhanced, not diminished. Consequently, the court held that by death the husband loses a power over the property that he never owned, and the widow gains new powers over property that was already hers. The court also held that this shift in power was substantial enough to be a rational basis for the levy of a Federal tax.

[16] In determining who was the real owner of the widow's share of community income received by the deceased husband's estate the court held that the executors of the decedent's estate stood in the decedent's shoes with the diminished powers and prescribed duties of the decedent. As his representatives, the executors could not hold greater powers and possession than the decedent. The court noted that the wife, at decedent's death, could dispose of her part of the community property subject to community debts and charges.

[17] See *Estate of Blackburn v. Commissioner*, 11 T.C. 623 (1948).

therefore, the husband continued to be the owner of, and taxed on, his half of the community income during the administration of the deceased wife's estate.[18]

We addressed this issue once more in *Estate of Sneed v. Commissioner*, 17 T.C. 1344 (1952), affd. 220 F.2d 313 (5th Cir. 1955). The facts of this case again involved Texas law and a surviving wife. There, believing that the Fifth Circuit had withdrawn from the *Barbour* position, we held that the estate of the deceased husband was taxable on only one-half of the community income. On appeal, the Fifth Circuit, in a divided opinion, without supporting or overruling *Barbour*, affirmed our opinion.[19] In *Sneed v. Commissioner*, 220 F.2d 313 (5th Cir. 1955), the Court stated:

> On the death of the husband in Texas, as in Louisiana, the wife's share of the community is freed from the restrictions of his exclusive management, and the wife acquires exclusive possession thereof, as well as important new powers of control and disposition of it. The marital partnership is dissolved upon divorce or death, and the survivor holds his or her half interest in the property of the former community as a tenant in common with the heirs of the decedent, but the surviving wife's half of the community vests in her subject to the payment of the community debts. * * * [*Sneed v. Commissioner, supra* at 314.]

Concurring with the *Sneed* opinion, Judge Rives agreed that the surviving spouse was taxable on half of the income but stated he would have reached that holding by overruling *Barbour*. Judge Rives recognized that the wife's vested interest made her the owner of half the community property during the lifetime of both spouses, and noted that although, upon the death of the husband, the executors of his estate had control and possession of the community prop-

---

[18]This distinction ignores the fact that both the husband and wife, as partners in the "community," each own a vested one-half interest in all community property. The husband's superior *power* and *control* over the community property is derived solely from his role as the managing partner of the "community." Upon his death, his management powers disappear and the surviving wife gains the management power over her share of the property. Similarly, upon the wife's death, the "community" terminates, therefore, the husband no longer has a "community" for which to manage property. His sole power is to ensure that the wife's share of the community property becomes subject to any outstanding community debts. See *Henderson's Estate v. Commissioner*, 155 F.2d 310, 312 (5th Cir. 1946).

[19]The Court did not overrule *Barbour*. However, it held that its ruling in *Sneed* did not conflict with *Barbour* because it stated the holding in *Barbour* as anticipating the filing of a separate return for the widow's portion of the income. In reference to the *Barbour* opinion, the court stated "the executors were required to pay it or see that it was paid, and if they had paid it, fidelity to their cestue que trust would have required them to make a separate return for the widow's portion of the income." *Sneed v. Commissioner*, 220 F.2d 313, 314 (5th Cir. 1955). In *Barbour* no separate return was made for the surviving wife's portion of the income.

erty, including community income, for purposes of paying any debts existing against the property, that the property was still owned by the widow. One-half of any community debts which were paid by the executor of the decedent's estate would inure to the benefit of the widow. Judge Rives went on to conclude that *Barbour* placed undue emphasis upon the powers of the executors over the deceased spouse's estate.

Judge Tuttle, in a dissenting opinion, recognized that the only factual difference between *Sneed* and *Barbour* was that in *Sneed* the widow reported, and paid the tax on half of the income. There, it was correctly emphasized that the liability for a tax should not be affected by the erroneous reporting of it by another taxpayer. Judge Tuttle expressed concern over the fact that the court did not clearly address the question of which party was liable for the tax, and that the court neither supported nor overruled *Barbour*. We agree with and follow both Judge Tuttle's and Judge Rives' opinions.

In *Estate of Woodward v. Commissioner*, 24 T.C. 883 (1955), we adhered to the position that community income received by the executors of the deceased spouse's estate, during the administration of the estate, is taxable one-half to the estate and one-half to the surviving spouse. We make no distinction as to whether the deceased spouse is the husband or wife.

After careful review of the facts before us, we find that the prevailing law of the Ninth Circuit is controlling.[20] Petitioner was the owner of one-half of the Everett payments before decedent's death. The death of her husband did not diminish her interest in the payments due to the "conjugal partnership," rather, through his death, the management powers he had over her one-half of the community income were relinquished by him and petitioner acquired those powers. These management powers did not pass to the executors of decedent's estate. Moreover, petitioner's interest in her half of the property did not pass into hiatus during the administration of the estate. Petitioner's interest in one-half of all the community property, including the Everett payments, became immediately vested

---

[20]The latter evolution of the law in the Fifth Circuit is also in agreement.

in her, free for disposal as she wished, subject only to the outstanding community debts. Consequently, we hold that petitioner is taxable on one-half of the community income, and must report, in the years of receipt by the estate, one-half of the community income received by decedent's estate.

The record reflects one outstanding community debt; Federal income tax deficiencies and interest in the amount of $575,348.29, due for the taxable years 1956 through 1964.

Petitioner contends that should this Court find she is taxable on one-half of the community income when received by decedent's estate that one-half of the community debt outstanding at the date of decedent's death should be used to decrease the income taxable to her. We disagree.

Petitioner relies on article 182, Civil Code of the Philippines, which states that she is entitled only to one-half of the net proceeds of the "partnership" after all community debts are paid. The Civil Code of the Philippines merely sets forth what petitioner is entitled to under Philippine law. This, however, does not govern the amount petitioner is required to report for United States Federal tax purposes. See *Commissioner v. Estate of Bosch*, 387 U.S. 456, 465 (1967).

### Issue 2 — Expiration of Statute of Limitations

Petitioner challenges respondent's determination of a deficiency with respect to the 1978 taxable year. Petitioner contends that because the notice of deficiency was not mailed until September 11, 1984, the 3-year period within which respondent must assess the tax had expired. Sec. 6501(a).

Section 6501(a) provides, in pertinent part, as follows:

SEC. 6501(a). GENERAL RULE.—Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed (whether or not such return was filed on or after the date prescribed) * * * and no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period.

However, section 6501(e)(1) provides certain instances where an exception to the general 3-year statute applies. Section 6501(e)(1)(A) provides in pertinent part, as follows:

(A) GENERAL RULE.—If the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 percent of the amount of gross income stated in the return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 6 years after the return was filed. * * *

Petitioner filed her Federal income tax return for the 1978 taxable year on June 18, 1979, reporting total gross income of $9,478. Because we have found that petitioner should have reported one-half of each Everett payment received by decedent's estate ($492,046.15 for each of the years 1978, 1979, and 1980), and that petitioner has reported gross income for 1978 in the amount of $9,478, we find that petitioner has omitted an amount in excess of 25 percent of the amount of gross income stated in the return. Accordingly, we find that pursuant to section 6501(e)(1)(A) the notice of deficiency mailed September 11, 1984, was mailed well within the statutory period and was, therefore, timely mailed to petitioner with respect to the taxable year 1978.

To reflect the foregoing,

*Decision will be entered for the respondent.*